[No. 1359.    August 26, 1911.]
RICHARD DI PALMA, ET AL., Appellees, v. J. A.
WEINMAN, ET AL., Appellants.

### SYLLABUS (BY THE COURT).

1.  Plaintiffs, lessees of defendant Weinman, were com
pelled, by the tortuous acts of defendant, to abandon Wein-
man's building in which they were carrying on a retail drug
trade, and for the remainder of the term of their lease con-
tinued their business in less desirable locations.  They
proved a loss in average daily, weekly and monthly sales,
that their percentage of profits was 40% in gross sales and
the monthly expenses of carrying on the business in each
place.  Held, that where damages are claimed for loss of
sales of goods, it was not necessary for claimants to intro-
duce evidence as to (a) the amount of stock they carried,
(b) the accounts of the individual partners, (c) the amount
of capital invested, or (d) to produce books from which a
bookkeeper could ascertain the percentage of profits realized
from the business.

2.  The plaintiffs were damaged by being deprived of an
opportunity to sell goods, their loss was the net profits they
would have made on such sales: Held, it was immaterial
whether plaintiff's business was on the whole profitable or
unprofitable.

3.  One of the plaintiffs testified that he had been a
pharmacist for thirty-five years, for over thirty years had
been engaged in that profession in Albuquerque and that
plaintiffs had been in the retail drug business for sixteen
years and that he knew how much gross profits plain-
tiffs made on the goods they sold: Held, that the witness
was competent to testify what the gross profits of the busi-
ness were.

4.  One of the plaintiffs testified, as to the monthly ex-
penses of the business, that they kept no account of the
expenses, but that he could state the same from memory:
Held, that in the absence of any record of the items of ex-
pense, the witness was competent to state from memory the
expenses of the business.

Di Palma v. Weinman, 16 N. M. 302.

5. Plaintiffs introduced in evidence a cash book containing an account of their monthly cash receipts during the term of the Weinman lease, and one of the plaintiffs was allowed to testify from said book as to plaintiffs' cash sales. It was insisted by defendant that the book was not competent, because plaintiffs had been in business in Albuquerque for a number of years before they leased the Weinman building and the receipts included collections for sales made by plaintiffs prior to their occupancy of the Weinman building: Held, that this fact did not destroy the evidentiary value of the book, for the reason that if the receipts during the occupancy of the Weinman building were increased by an unknown amount and the receipts thereafter until the end of the term of the Weinman lease were increased by a like amount, the difference, the object of the inquiry, would not be affected.

6. The defendants insist that the plaintiffs should not have been allowed to put in the testimony they did as to loss of profits, because it appeared that the plaintiff, Ruppe, after the cause of action had accrued, voluntarily destroyed plaintiff's invoices, check books, cancelled checks and bank pass book. The evidence examined and, Held, that no error was committed, because the destruction of the invoices, etc. was compatible with good faith on the part of plaintiffs.

7. The plaintiff, Ruppe, over the objection of the defendants, was permitted to testify as to the relative desirability for trade purposes of the Weinman building and the location to which plaintiffs removed: Held, that the witness's use and occupancy of the buildings qualified him to testify Following Union Pacific Ry. v. Lucas, 136 Fed. 374; 69 C C. A. 218, and that the question as to whether the witness was qualified to give his opinion was for the trial judge to determine and his decision, not being clearly erroneous as a matter of law, will not be disturbed. Following Stilwell & B. Mfg. Co. v. Phelps, 130 U. S. 520.

8. Plaintiffs were permitted, over objection of defendants, to ask a witness if he had not, prior to the commencement of the excavation which caused the plaintiff's damage,

Di Palma v. Weinman, 16 N. M. 302.

drawn plans for a building to cover Weinman's lot. Though the answer of the witness was favorable to defendants, they complain that the court committed error in allowing the question to be asked, because it showed a deliberate purpose on the part of plaintiffs to injure defendants by showing that they caused the damage intentionally: Held, no error was committed, because, (a) even if the question was improper, it was rendered harmless by the witness's answer, and (b) the verdict does not show but that the jury gave plaintiffs a verdict for compensatory damages only.

9.    Special questions were put to the jury and the answers made to them were inconsistent: Held, that where special findings are inconsistent, they neutralize each other and the general verdict controls.

10.   The jury brought in a verdict in favor of plaintiffs and assessing "their damages at five thousand dollars, at six per cent. interest:" Held, that the verdict was ambiguous and that the court committed no error in ordering the jury to retire and bring in another verdict.

11.   The instructions of the court to the jury upon their bringing in an ambiguous verdict examined and, Held, not to have invited the jury to add to their verdict.

12.   Defendants complain of the refusal of the trial judge to send the books introduced in evidence: Held, that the defendants should have taken such steps as the law provides for having the books sent up.

13.   The proof offered by plaintiffs of loss on account of damage to goods, is no stronger than that offered at the previous trial and should have been excluded. 15 N. M. 68; 103 Pac. 789.


Appeal from the District Court for Bernalillo County, before IRA A. ABBOTT, Associate Justice. Affirmed with Remittitur.

NEILL B. FIELD for Appellant Barnett.

The jury should not have been permitted to consider the evidence with reference to the damaged goods. DiPalma v. Weinman, 13 N. M. 226; 15 N. M. 68.

Actual damages must be actually proved and cannot be assumed as a legal inference. McSherry Co. v. Dowagiac Co., 160 Fed. 948; Seymour v. McCormick, 16 Howard 480; Philip v. Nock, 17 Wall. 462; Railway Co. v. Mfg. Co., 44 S. E. 893; Mineral Springs Co. v. Kuhn, 91 N. W. 510; Coal Co. v. Hartman, 111 Fed. 102; Boston R. R. v. O'Reilly, 158 U. S. 334; Swift v. Johnson, 138 Fed. 867; Richmond R. R. v. Elliott, 149 U. S. 266; Howard v. Mfg. Co., 139 U. S. 199; Giles v. O'Toole, 4 Barb. 261; Gildersleeve v. Overstolz, 90 Mo. App. 530; 3 Par. Con., 6 ed., 180; Iron City Toolworks v. Welisch, 128 Fed. 693; Gas Co. v. Siemens-Lungren Co., 152 U. S. 200; Mining Co. v. Humble, 153 U. S. 540; Casper v. Klippen, 61 Minn. 353; Central Trust Co. v. Clark, 92 Fed. 293.

Admission of prejudicial evidence. 4 Suth. Dam. secs. 1030, 1033; 3 Wig. Ev., sec. 1725, 1917 et seq.; 1 Wig. Ev., secs. 768 et seq.; Rogers Exp. Tes., sec. 1 et seq.; Ferguson v. Hubbell, 97 N. Y. 507; Pearson v. Alaska Co., 99 Pac. 753; Schmieder v. Barney, 113 U. S. 645; Milwaukee Ry. Co. v. Kellogg, 94 U. S. 469.

Having destroyed the invoices, checks, etc., plaintiffs should not have been permitted to give secondary evidence of facts which the destroyed instruments tended to prove. 2 Wig. Ev., secs. 1198 et seq.; Broadwell v. Stiles, 8 N. J. L. 58; Joames v. Bennett, 87 Mass. 169; Parker v. Kane, 4 Wis. 1; Wallace v. Harmstead, 41 Pa. St. 492; Riggs v. Taylor, 9 Wheat 483; Adms. of Price v. Adms. of Tallman, 1 N. J. L. 511; Wykcoff v. Wykcoff, 16 N. J. Eq. 491; Wilke v. Wilke, 28 Wis. 298; Bagley v. Adms. of McMickle, 9 Cal. 430; Gugins v. Van Sorder, 10 Mich. 522.

Instructions as to interest. 13 N. M. 226; C. L. 1897, secs. 2550, 3219; Parker v. Nickerson, 137 Mass. 487; Rochester v. Levering, 4 N. E. 203; Suth. Dam., secs. 355-366.

Surplusage. Meeker v. Gardella, 23 Pac. 837; Pat-

terson v. United States, 2 Wheat. 221; Relfe v. Wilson, 131 U. S. 186; Hattenback v. Hoskins, 12 Iowa 109; Haycock v. Greup, 57 Pa. St. 438; Parker v. Fisher, 39 Ill. 164.

Conflicting instructions. Brown v. McAllister, 39 Cal. 577; Hoben v. Railroad Co., 20 Iowa 567; Haight v. Vallet, 89 Cal. 245; Bank of Metropolis v New England Bank, 6 How. 212.

Instructions as to damages erroneous. 3 Suth. Dam., sec. 864; 1 Sedgwick Dam. 128.

Independent contractor. Casement v. Brown, 148 U. S. 615; Chicago v. Robbins, 67 U. S. 418; Transportation Co. v. Chicago, 99 U. S. 635; Sulzbecker v. Dickie, 51 How. Pr. 500; Norwalk Gas Co. v. Norwalk, 63 Conn. 495; Conners v. Hennessey, 112 Mass. 96; Engel v. Eureka Club, 33 Am. St. Rep. 693; Dillon v. Hunt, 24 Am. St. Rep. 374; Charles v. Rankin, 66 Am. Dec. 642, and note; Gilmore v. Driscoll, 122 Mass. 199.

Construction of party wall did not necessarily involve trespass. 1 Taylor Land. and Ten., sec. 174; Nor. Trust Co. v. Palmer, 49 N. E. 555; Prond v. Hallis, 1 B. & C. 8; Penley v. Watts, 7 M. & W. 601; Shaw v. Comiskey, 7 Pick. 76; Peterson v. Edmunson, 5 How. 378.

Submission to jury on erroneous theory. Skally v. Shute, 132 Mass. 370; International Trust Co. v. Schumann, 158 Mass. 291; 3 Suth. on Dam., sec. 864, 3rd ed.; Bartlett v. Farrington, 120 Mass. 284; Royce v. Guggenheim, 106 Mass. 201; Bennett v. Bittle, et al., 4 Rawle 381.

EDWARD A. MANN for Appellant Weinman.

Actual damages. 13 N. M. 226; 15 N. M. 68; Central Coal & Coke Co., et al. v. Hartman, 111 Fed. 196; Howard v. Manufacturing Co., 139 U. S. 199; Cincinnati v. Siemens-Lungren' Co., 152 U. S. 200; Simmer v. City of St. Paul, 23 Minn. 408; Griffin v. Colver, 16 N. Y. 489; 1 Sedg. Dam., sec. 183; Red v. City Council, 25 Ga. 386;

Di Palma v. Weinman, 16 N. M. 302.

Kenney v. Collier, 79 Ga. 743; Greene v. Williams, 45 Ill. 206; Hair v. Barnes, 26 Ill. App. 580; Morey v. Light Co., 38 N. Y. Sup. Ct. 185; The Mayflower, 1 Brown Adm. 387; Sturgis v. Clough, 1 Wall. 269; The Conqueror, 166 U. S. 110; The Transit, 4 Ben. 138; The Emilie, 4 Ben. 235; R. L. Maybey, 4 Blatchf. 439; The Clarence, 3 W. Rob. Adm. 286; Horres v. Berkley Chemical Co., 52 L. R. A. 45; Ill. & St. L. R. & Coal Co. v. Decker, 3 Ill. App. 135; Kentucky Heating Co. v. Hood, 22 L. R. A., N. S., 588; Miller v. Wilkesbarre Gas Co., 206 Pa. 254.

Special findings control general verdict. C. L. 1897, sec. 2993.

MARRON & WOOD and A. B. McMILLEN for Appellees.

Legal evidence of loss of profits. 3 Suth. on Damages, 3 ed., secs. 867-869; 1 Suth. on Damages, 3 ed., sec. 70; City of Terre Haute v. Hudnut, et al., 112 Ind. 542; Di Palma v. Weinman, 15 N. M. 68; Wicker v. Hoppock, 6 Wall. 99; Hexter v. Knox, 68 N. Y. 561; Chapman v. Kerby, 49 Ill. 211; Smith v. Duquid, 65 Ill. 464; N. Y. Academy of Music v. Hockett, 2 Hilt. 217; Allison v. Chandler, 11 Mich. 542; Seyfert v. Bean, 83 Pa. St. 450; Lacour v. Mayor, etc., 3 Duer. 406; Eten v. Luyster, 60 N. Y. 252; Shafer v. Wilson, 44 Md. 268; Glass v. Garber, 55 Ind. 336; Clark v. St. Clair, etc. Co., 14 Mich. 508; Fradenheit v. Edmundson, 36 Mo. 226; Kemper v. City of Louisville, 14 Bush. 87; Gibson v. Fischer, 68 La. 29; Lawson v. Prince, 45 Md. 123; Oliver v. Perkins, 92 Mich. 304; Goebel v. Hough, 26 Minn. 252; Downell v. Jones, 52 Am. Dec. 194; Anvil Mining Co. v. Humble, 153 U. S. 459; Peshine v. Shepperson, Va., 94 Am. Dec. 474; Shile v. Brokhaus, 80 N. Y. 618; Loder v. Jayne, 142 Fed. 1020; Occidental & C. Mining Co. v. Comstock Tunnel Co., 125 Fed. 244; Pacific Steam Whaling Co. v. Alaska Packers' Ass'n., Cal., 72 Pac. 163; Lincoln v. Claflin, 7 Wall. 132; Wakeman v. Wheeler & Wilson M. Co., 101 N. Y. 205.

### STATEMENT OF FACTS.

The appellees, hereinafter styled the plaintiffs, brought this suit against the appellants, hereinafter styled

the defendants, to recover ten thousand dollars as damages on account of the falling of a wall and the consequent destruction of part of plaintiffs' stock of drugs and merchandise and their enforced removal to another building; from a judgment of $7,738.00 based · on the verdict for that amount by a jury, the defendants bring this appeal.

### OPINION OF THE COURT.

MECHEM, J.— This is the third time this case has been before this court: Di Palma v. Weinman, 13 N. M. 226; 82 Pac. 360; 103 Pac. 782, 15 N. M. 68. The case was reversed the last time because of a lack of evidence to prove loss of net profits, loss on damaged goods and for an erroneous instruction as to interest. 103 Pac. 782; 15 N. M. 68. 1. On the question of lack of evidence to establish loss of profits this court said: "There is, however, no evidence of loss of profits, except the bald statement of the witness, Ruppe, as to the net profits per month during the time he occupied the Weinman building premises, and at the location to which he moved his stock after the wall fell. True, the record shows that he referred to some memoranda to refresh his memory; but it nowhere appears what the memorandum was, nor when or by whom it was made, nor does it state that he knows, or even believes, it to be correct. This being true, it was error to submit the question of loss or profit to the jury, there being no sufficient evidence to sustain a verdict for such loss." At the trial, from which this appeal is taken, the witness Ruppe produced a cash book, several day books, a soda fountain book and a ledger kept by plaintiffs in the regular course of their business, and from these books, and especially from the cash book, the plaintiff Ruppe stated what were the cash receipts of the business of plaintiffs, for six and one-half months they occupied the Weinman building, and for the remainder of the term of their lease from Weinman, in the locations to which they were compelled to move. The witness Ruppe testified that he had been a pharmacist for thirty-five years and for

over thirty years had been engaged in that profession in Albuquerque and that he and Di Palma had been partners in the retail drug business there since 1894. In reply to a question as to what his gross profits on sale in the retail drug business had been, he said: "A good many of the medicines came with the prices marked thereon; others we figured the cost and what they were worth at retail is marked thereon; prescriptions are compounded and the profit is figured on the drugs and the time used in preparing the same. Certain goods such as sundries and articles of luxury are generally figured at a percentage ranging from fifty to one hundred per cent; prescription compounding must bring more than one hundred per cent; patent medicine profits range all the way from 25 to 35 per cent; in my experience as a druggist in figuring profits that I have made in my business, I figure that my business produced me on the average of 40 per cent. gross." As to the monthly expenses of the business, the witness testified that plaintiff's expenses were $434.00 per month. This he stated from memory and on cross-examination said that he had no record of any kind of the monthly expenses, but could and did state the same from memory solely. The defendants claim that these books, for various reasons, furnish no basis for an intelligent estimate, of profits derived from the business and cannot possibly corroborate the testimony of the witness. Their reasons are (a) the books contain no stock account; (b) they contain no account of Richard Di Palma and B. Ruppe as partners; (c) they contain no showing of the amount of capital invested; (d) they contain no account from which a bookkeeper could ascertain the percent of profits realized; (e) or how much merchandise was bought; (f) nor what the expense of conducting the business was.

2. It would seem that with respect to a case of this kind, where the injury sought to be compensated was a loss of profits, which flowed from but one fact, i. e., the diminution of the sales of a retail merchant, that it was first in order, to show that there was such diminution in

sales.   In this case such diminution was established be-
yond a doubt.   Then the next question presenting itself
was, what profit did the merchant lose because of such
diminution in sales; that is, net profits?   In the case of
Foster v. Goddard, 9 Fed. Cas. 4,970, it was said: "Net
profits may be defined to be the gain made by the merchant
in buying and selling goods, after paying all costs and
charges for transacting his business."   If plaintiffs' sales
in the Weinman building amounted to so much per month,
and they made a profit of 40 per cent. on the amount of
such sales, and their monthly expenses of conducting
their business amounted to so much, from these facts the
amount of net profit made would be a mere matter of calcu-
lation; and if after the plaintiffs removed from the Wein-
man building, their average monthly sales were shown to be
so much, on which their profits were 40 per cent., and
their monthly expenses of conducting the business were
shown to be so much, then their monthly net profit in the
other building could be ascertained, and the monthly net
profit in the Weinman building exceeding that resulting
from carrying on the same business in the other building,
such difference multiplied by the number of months remain-
ing in the lease with Weinman would give loss of net profit
suffered by plaintiffs, for which they sue.   The factors
necessary to be established were, amount of sales, gross
profits on sales and expense of carrying on the business.
These being established by competent evidence, the jury
could estimate with reasonable certainty what loss, if any,
was suffered by plaintiffs.   It follows then that the amount
of capital invested, the amount of stock on hand or
invoice of stock purchased during the period, or the
account between the individual partners or the ledger
accounts from which a bookkeeper might have drawn a
statement of the condition of the firm, though they might
have been of some aid, yet were not so necessary that with-
out them, the matter sought to be established could not be
shown by other competent evidence.

In the case of Shepherd v. Milwaukee Gas Light Com-
pany, 15 Wis. 349, 82 Am. Dec. 679, on the point of how

Di Palma v. Weinman, 16 N. M. 302.

damages on account of loss of profits should be estimated, it is said: "And it seems to me that the profits of an established business are quite as capable of being ascertained with reasonable certainty as the profits to arise from a single contract or adventure. There is, in the case of such business, the experience of the past to serve as a test. And the rule suggested by Jervis, V. J., in Flecher v. Taylour, 33 Eng. L. & Eq. 187, that the damages should be estimated 'according to the average precentage of mercantile profits,' could readily be applied and would seem just and reasonable." And the court in the same case, speaking further on the same point, said: "It is well established that an action exists in many cases for an injury to a person's trade. Actions for slandering one in his trade or profession are of this character; and the damages are based upon the assumption that such slander injures the party's business by diminishing it. But how does that damage him? Clearly, only by depriving him of the profits he would have made by the business, of which he had been wrongfully deprived. So also of private actions for a nuisance, the only injury being a diminution of the plaintiff's business. * * * * In Marquart v. La Farge, 5 Ducr. 559, the defendant had wrongfully broken up the plaintiff's business in a restaurant. The plaintiff gave evidence of the extent of the business. 'And that one half of the receipts were profit.' The Court held the evidence was admissible. It said: 'Now, it was certainly competent to prove in some way, the nature and extent of the injury, and the value of the business was a proper subject of estimate for the jury.' They then said: 'It may be that the calculation of possible or probable profit, in view of the ordinary uncertainties of business, would not be allowable.' If by this the Court meant to exclude all consideration of the profits that would have resulted to the plaintiff according to ordinary course of business, it seems to me repugnant to what had previously been expressly allowed. They had allowed evidence of what the profits had been; they had said that the jury must estimate the value of the business, in arriving at the amount of the damages.

Now, I think it is impossible for any judge or jury to do this without considering the profits of the business."

For the purpose of this case only it may be said that the plaintiff's being damaged solely by being deprived of an opportunity to sell goods, they were then damaged to the extent of the net profits they would have made on the lost sales; therefore, it was immaterial whether on the whole venture plaintiffs were making money or not, for suppose they were, on account of a large stock of shelf-worn goods or more capital invested than necessary, or because they were operating to such an extent on borrowed money, making but a small margin of ultimate gain, yet, surely they were damaged to the full amount of their net profits on the sales they lost by defendant's trespass. If by reason of any of the causes above stated, plaintiffs were conducting the business on the whole at an actual loss, could defendants be heard to say: "True, by our tortuous acts we have caused you to lose sales of goods, on which goods you would have made a profit, but because your business was an unprofitable one, you have not been damaged." All that was required in this case was to prove profits for a few months anterior to the destruction of the building, and for the remainder of the term of the lease with Weinman with reasonable certainty, 103 Pac. 782, 15 N. M. 68. The witnesses' testimony from the books was competent and admissible, and, if the jury believed it, sufficient to sustain the verdict.

In his brief filed in this case, the last time it was before this court, 103 Pac. 782, 15 N. M. 68, the eminent counsel for the defendant Barnett criticized the evidence of that trial as follows: "The witness Ruppe, who was the only witness as to damages, was allowed to state * * * * what were the net profits of the business, without showing the amount of daily, weekly or monthly sales, in the building before the accident, or the amount of like sales in the building to which they removed or what percentage of profit was usual in the trade, or, indeed, any tangible fact which defendants could by any possibility disprove." This

view was adopted by the court and plaintiffs have, in our opinion, met this criticism, by showing their daily and monthly sales, both before and after their enforced removal, the percentage of profit they made in that trade and many tangible facts which the defendants might, if untrue, disprove. The case of Central Coal and Coke Co. v. Hartman, 111 Fed. 96-102; 49 C. C. A. 244, is not in point here because the testimony in that case consisted of the unsupported, naked statement of a witness about a transaction without producing any letters, books, checks, or other data to support it and for that reason the court held that such testimony ought not to be the foundation of a judgment in a case where the parties had books, letters, etc. 117 Fed. 540, Edward v. Bates Co. Neither is the case of the Conqueror, 166 U. S. 116, 41 L. ed. 937, in point. It did not turn on the competency of the evidence offered opinions of witnesses as to the loss of profits, but on the weight of the evidence. The court says of the witnesses' testimony that: "Their testimony falls far short of establishing such a case of loss of profit as entitled the libellant to recover this large sum for the detention of his yacht." And also in that case it was shown that the yacht in question was purchased by her owner for his own pleasure and that there was no definite evidence tending to show that he bought her for hire or would have leased her if he had been able to do so for any sum.

3. As to the objection that there was no record of the expenses of the business, it may be said, we think, that such items being regular in occurrence, more or less certain in amount and when sworn to so easily tested upon cross-examination, as to the items contained in amount testified to, that the witness Ruppe could well state the total amount and that it was competent. To hold otherwise would be tantamount to saying that the failure of a merchant under such circumstances to keep a regular set of books would deprive him of a remedy that the law gave him.

4. As to the objection to the evidence as to the cross

profits; the witness did not testify as to an opinion, but as to a fact within his knowledge, i. e., that the goods sold by the firm were sold at an advance of 40% above their cost. His evidence was admissible and competent and it was for the jury to say what weight was to be given it.

5. It is also insisted that the monthly cash receipts as shown in the cash book in evidence and from which the plaintiff, Ruppe, was allowed to state the amount of cash sales, cannot throw any light upon the profits during this period, because the record shows that plaintiffs were in the drug business in Albuquerque for many years before they ever entered into a lease with Weinman and how much of the gross receipts during the period to which Ruppe testified were for accounts collected on sales made prior to their entering into the Weinman lease nowhere appears. Admitting this statement to be true, yet it does not destroy the evidentiary value of the book, because of the amount of the monthly net profits before and after the plaintiffs left the Weinman building, would be the same, if we admit that during the occupancy of the Weinman building, of the cash receipts an unknown percent. was for sales made prior thereto, we are compelled to make the same admission with regard to the period after the plaintiffs left the Weinman building. The net profits in each case being swelled the same per cent., the difference, the object of this inquiry, is unaffected.

6. The defendants insist that the plaintiffs should not have been allowed to put in the testimony they did, as to loss of profits, because it appeared that the witness Ruppe, after the cause of action had accrued, voluntarily destroyed plaintiff's invoices, check book, cancelled checks and bank pass book. This cause of action accrued June 30th, 1902; the complaint was filed August 26th, 1902, and this case has been before the trial court for hearing four times and before this court three times, and this last hearing was more than eight years after the suit was brought. The witness Ruppe testified that he did not know when the invoices, etc., were destroyed, or by whom, but

admits that they were destroyed by his order, but that he never knew that they would be required in the case. The question was then for the judge to determine whether such destruction was compatible with good faith on the part of the plaintiffs. Ruppe said that it was his custom as invoices, checks, etc., accumulated to have them destroyed to get them out of the way. Prof. Wigmore thus states the rule: "The view now generally accepted is 6 that (1) a destruction in the ordinary course of business, and, of course, a destruction by mistake is sufficient to allow the contents to be shown as in other cases of loss, and that (2) a destruction otherwise will equally suffice,· provided the proponent first removes to the satisfaction of the judge, any reasonable suspicion of fraud." 2 Wigmore Evidence, sec. 1198. The case of Sturgis v. Clough, 1 Wall. 269, is not in point because in that case the "Libellant withheld the best evidence of his profits made by his boat, which would be found in his own books, showing his receipts and expenditures before the collission."

7. Counsel for the defendants assigns error to the admission by the trial court, of the testimony of the witness Ruppe, as to the relative desirability of the places to which the plaintiffs moved, as compared with the Weinman building. They say that such testimony was clearly opinion and should have been excluded. Admitting that such testimony was purely opinion, yet we still think the evidence was admissible, in view of the fact that the witness 7 had lived in Albuquerque thirty years, during which time he was employed in, or conducted a drug store; that he and Di Palma had been in business since 1894 in Albuquerque, or for a period of sixteen years at the date of the trial, and that he had occupied all three of the locations. Surely, if the rule, which requires those who testify as to the value of real estate, to qualify themselves by proof of knowledge of market value, derived from sales and purchases, does not apply to the owner of lands who has purchased and used them for himself, because his purchase.

his ownership and his use qualify him to give an estimate (Union Pac. Ry. v. Lucas, 136 Fed. 374; 69 C. C. A. 218), the witness Ruppe was qualified to give an estimate of the relative desirability of the locations in question. In any event, the question as to whether the witness Ruppe was qualified to give his opinion was for the trial judge to determine and his decision, not being clearly erroneous as a matter of law, will not be disturbed. Stilwell & B. Mfg. Co. v. Phelps, 130 U. S. 520.

8. The plaintiffs were permitted, over objection, to interrogate the witness LaDriere as to whether he had, prior to the commencement of the excavation, drawn plans of a building for Barnett which was intended to cover both lots. Though the answer of the witness was favorable to the defendants, they complain that even in allowing the question to be propounded, the court committed error, because it showed a deliberate purpose, on the part of the plaintiffs, to create in the minds of the jury the impression that, even before the party wall agreement was made, the defendants contemplated the construction of a building on both these lots, and thus to induce them to infer that defendants, at that time, contemplated the destruction of the building occupied by plaintiffs, and therefore such destruction was malicious. For the reason (a) that the question, even if improper, was rendered harmless by an answer favorable to the defendants, and because (b) the verdict does not show but that the jury gave plaintiffs a verdict for compensatory damage only, this assignment of error is held to be bad.

9. The following special questions were put to the jury and answered as follows: No. 1. "Did the plaintiffs have reasonable grounds for apprehension that the wall of the building occupied by them might fall as the result of the excavation being made on Lot 1?" A. "No, sir." No. 2. "Could the plaintiffs by the use of means reasonably within their reach have protected themselves from damage by the falling of the wall of the building occupied by them?" A. "No, sir." No. 3. "What, if anything, did the plaintiffs do towards protecting themselves from the loss or damage to their property by the falling of the wall

of the building occupied by them?"  A. "No, sir."  No. 4. "Ought the plaintiffs as reasonable men have anticipated the fall of the wall of the building occupied by them?" A. "Yes, sir." ∴.

While when special findings of facts are inconsistent with the general verdict in a case, the former shall control the latter as provided·by Section 2993, C. L. 1897, yet where the special findings are themselves antagonistic as in this case, they neutralize each other and the general verdict controls.  2 Thompson Trials, sec. 2692.

10.  After retiring, the jury brought in the following verdict: "We, the jury, find the issues for the plaintiffs and assess their damages at five thousand dollars at six per cent interest."  The plaintiffs objected to this verdict and the court gave the following instruction:  "Gentlemen: If by the verdict you have brought in, assessing the plaintiffs' damages against the defendants at five thousand dollars with six per cent. interest, you mean that something in the nature of interest up to the present time be added to the sum of five thousand dollars you name, you shall determine the amount under the instructions given you, and it will be a better way to add it to whatever other sum you may find, so as to make one total.  If it is not your intention to add anything in the nature of interest up to the present time to said sum of five thousand dollars, you should make your meaning clear by your verdict. Another blank form for verdict will be furnished you to be filled out and returned as you have been instructed."  After this charge the jury retired and thereafter brought in the following verdict: "We, the jury, find the issues for the plaintiffs and assess their damages at seven thousand seven hundred and thirty-eight dollars in total amount." If, as asserted by defendants, the verdict as originally returned was not ambiguous, but simply showed that the jury found all the damages which plaintiffs suffered would have been five thousand dollars it was their intention that that sum should thereafter draw six per cent., then the addition of the words "at six per cent interest" meant nothing for the judgment would have drawn six per cent

Di Palma v. Weinman, 16 N. M. 302.

by force of statute. If, however, these words indicated that the jury intended to give the plaintiffs interest on their damages, then they certainly were ambiguous and the plaintiffs had a right then and there to have the verdict rendered certain.

11. The question then is, and it is raised by counsel for defendants, did the court's instruction as above set forth invite the jury to add to their verdict against the defendants? We do not believe the instruction susceptible of any such construction. The verdict as returned included above the sum of five thousand dollars what would amount to about 7.15% on the amount of five thousand dollars from the date of the injury to the rendition of the verdict.

12. Complaint is made by defendants on account of the refusal of the trial judge to send up to this court some of the books offered in evidence. If these books would have aided us in determining this cause they should be here and the defendants should have taken such steps as the law provides for having them sent up.

13. The proof as to damaged goods, that is, goods not entirely destroyed, should have been excluded, as it is no more competent than at the former hearing in this case. That was for an item of $500.00.

Counsel for defendants have argued other points in their brief which we do not deem it necessary to discuss, as they have been disposed of by this court in former opinions. If the plaintiffs will file a remittitur of $770.00, being $500.00 on account of plaintiffs' claim of that amount for damaged goods and $270 interest thereon, the judgment of the lower court will be affirmed; if not it will be reversed.