237 P.2d 925

**NATIONAL AGR. COLLEGE v. LAVENSON.**

No. 5409.

Supreme Court of New Mexico.

Nov. 17, 1951.

H. E. Blattman, Las Vegas, J. Turner White, Springfield, Mo., for appellant.

Noble & Spiess, Las Vegas, for appellee.

McGHEE, Justice.

David Winternitz died in San Miguel County, New Mexico, on April 21, 1923, leaving a last will and testament. After making certain specific bequests the bulk of the estate was left in trust to pay the net income to testator's widow, Carrie Winternitz, for life and then to her daughter, Edna Lavenson, for life, and upon the death of the survivor the trust was to terminate and the balance of the trust was directed to be distributed to specified charities, one of which is the appellant. Certain codicils were executed changing the

trustees and also providing their compensation should be fixed by the Judge of the Fourth Judicial District. Letters testamentary were issued to Carrie Winternitz on the 3rd day of July, 1923; shortly thereafter she filed her inventory, and the estate was appraised at $136,483.28. Carrie Winternitz died on April 15, 1948, leaving an estate appraised at more than $81,000. Thereafter Edna Lavenson was appointed administratrix de bonis non of the estate of David Winternitz and her final report was filed September 6, 1949. The estate was handled by the executrix and administratrix as such and it does not appear the trustees ever functioned.

■ Upon the filing of the final report by the administratrix de bonis non the appellant filed its objections and exceptions to expenditures aggregating the sum of $61,724.34. Following the final hearing it filed its requested findings of fact and conclusions of law in which it asked that the following expenditures made from the corpus of the estate be disallowed:

a. Executor's commission to Carrie Winternitz — $ 5,279.41
b. Secretarial service to Edna Lavenson — 21,000.00
c. New Mexico Succession Tax — 4,269.83
d. Judgment of First National Bank against Estate (including costs) — 4,861.83

e. Repairs and Improvements to premises at 7th & Main, Las Vegas, New Mexico:

| | | |
|---|---|---|
| Wall in Cellar | $ 213.60 | |
| Toilet & Bath | 185.00 | |
| New Roof | 185.00 | |
| Sewer Assessment | 177.32 | |
| Total: | | $ 760.92 |

Repairs and Improvements to Bridge St. Store, Las Vegas, New Mexico:

Roof — 1,050.00

It attempts here to enlarge the above items which the trial court was asked to hold should have been paid out of income rather than the corpus of the estate. It would be manifestly unfair to the opposing party and the trial court to permit appellant to enlarge upon the items which, after a hearing, it then asked to be held illegal. See Rule 52, sub-paragraph (B) (6), Rules of Civil Procedure, Sec. 19–101, N.M.S.A., 1941 Comp., and some of our more recent cases declaring this fundamental rule, to-wit: Rubalcava v. Garst, 53 N.M. 295, 206 P.2d 1154; Teaver v. Miller, 53 N.M. 345, 208 P.2d 156; Chavez v. Chavez, 54 N.M. 73, 213 P.2d 438.

■ In its brief the appellant continually refers to the compensation allowed the executrix as trustee's fees. The record, however, shows this to be the statutory allowance for the fees of the executor as provided in Sec. 33–1001, N.M.S.A., 1941

Comp., and we hold the allowance was proper.

■ We come now to the allowance of $21,000 made to Edna Lavenson for secretarial work, of which $10,605 was charged by the trial court to the corpus of the estate and the balance to income.

Paragraph 16 of decedent's will provides: "I hereby order and direct that my said Trustees shall pay over every three months the net profits and income of my said trust estate to my said wife Mrs. Carrie Winternitz during her lifetime, and upon her death to pay over in like manner the said income to her daughter, Edna Lavison as long as she remains unmarried, who although she has not been adopted by me has since my marriage with her mother not accepted my name, and. is known as Edna ~~Winternitz~~ Lavinson." Even absent a provision that only the net income should go to the life tenant, it is the rule that ordinary expenses. of management and carrying charges must be deducted from income and only the amount remaining thereafter goes to such a beneficiary. The Restatement of the Law, Trusts, Sec. 233, states:

"(1) Except as otherwise provided by the terms of the trust, if property is held in trust to pay the income to a beneficiary for a designated period and thereafter to pay the principal to another beneficiary, (a) the former beneficiary is entitled to, and only to, the net income during such period, and

"(b) the latter beneficiary is entitled to the principal on the expiration of such period.

"(2) The net income is ascertained by subtracting expenditures allocable to income from receipts allocable to income."

And Comment *e* thereunder is as follows: "*Current expenses.* Ordinary current expenses in connection with the administration and management of the trust are payable out of income * * *." Vol. 3 Page on Wills, Sec. 1158, contains this statement, at pp. 437, 438: "In the absence of language in the will which, when read in connection with the rest of the will and with the surrounding circumstances shows that testator means to charge certain expenses upon the income of certain property and to free the income from other property from the burden thereof, a gift of income generally means a gift of the net income from the property, fund and the like after deducting periodic recurring taxes and other expenses which are necessary to the preservation of the property from which the income is derived or which are necessary to earn the income, to keep account of it, and the like." See also, In re Chapal's Will, 269 N.Y. 464, 199 N.E. 762, 103 A.L. R. 1268; Robert's Estate, 316 Pa. 472, 175 A. 487; Spencer v. Spencer, 219 N.Y. 459, 114 N.E. 849, Ann.Cas.1918E, 943.

■ Where the will contains a provision that the life beneficiary is to receive the "net income" the conclusion that the income shall bear the ordinary expenses of administration is inescapable. In the case of In re Brooklyn Trust Co., 92 Misc. 674, 157 N.Y.S. 547, a life tenant complained that certain expenses were improperly charged to income instead of principal. The court said:

"* * * The rule is that the just and proper expenses of carrying any of the assets of the trust, if incurred in a just and proper administration, must be borne by the income.

"Where the trust is that the life beneficiary shall have the net income, all that the will assures to him is the income, less all the necessary expenses of mere maintenance. He then receives all which the will gives. His only misfortune is that the testator did not put into the trust in his behalf more or other property. Unless it be found in the will, there can be no departure from this rule. * * *"
And to the same effect is Old Colony Trust Co. v. Walker, 319 Mass. 325, 65 N.E.2d 690.

■ This court has heretofore defined the terms, "net proceeds" and "net profits", terms which for present purposes are essentially the same in meaning as "net income". In Harriman Institute of Social Research v. Carrie Tingley Crippled Children's Hospital, 43 N.M. 1, 84 P.2d 1088, 1090, a lottery scheme whereby a certain amount of the proceeds were to be used to pay expenses was declared not to come within the terms of Sec. 35–3808 of our 1929 Compilation which validated certain lotteries when "all the proceeds" were expended for charitable purposes. We there held that the term "all the proceeds" means the "gross proceeds"; that the phrase "all the proceeds" does not mean "the net proceeds" and that the two phrases are opposite in meaning. In Di Palma v. Weinman, 16 N.M. 302, 121 P. 38, 40, affirmed 232 U.S. 571, 34 S.Ct. 370, 58 L.Ed. 733 in determining the measure of damages to be allowed for the collapse of a wall in a retail drug store our court defined net profits to be "the gain made by the merchant in buying and selling goods, after paying all costs and charges of transacting his business", specifically approving that definition contained in Foster v. Goddard, 9 Fed.Cas. 534, No. 4,970. So, in the present case, the use of the specifically limiting term "Net profits and income" excludes any contention that the income from the trust properties should not be made to bear the ordinary expenses of administration of the trust.

While the probate case was never closed and the assets turned over to the trustees as such, the beneficiary could not thus avoid the plain terms of paragraph 16 of the will and pay expenses out of the cor-

pus of the estate and appropriate the gross income to her own use.

We are of the opinion and hold that the expenses incurred for secretarial work should have been paid from income and the executrix charged with the amount paid on account thereof.

◼ The appellant did not include the payment of the New Mexico Succession Tax on the property going to the appellant and other charities in its objections to the final report and now contends it should have been paid from income. The appellee contends the report and objections thereto constitute the pleadings on which the final report was held, and that the appellant cannot, therefore, question that item here. It is true this item was not so questioned, but at the hearing it was litigated without protest and, consequently, the objections will be treated as amended. Springer v. Wasson, 25 N.M. 379, 183 P. 398; Mesich v. Board of Com'rs of McKinley County, 46 N.M. 412, 129 P.2d 974.

◼ The provision for the payment of a Succession Tax where property is left to a life tenant or tenants with remainder over is found in Sec. 34–113, N.M.S.A., 1941 Comp., and the pertinent part thereof reads: " * * * Where a life estate or an annuity is bequeathed or devised to a parent or parents, husband, wife or lineal descendants, or legally adopted child, and remainder over to collateral kindred, or to strangers to the blood, or to a corporation, voluntary association, or society, then the tax of one (1) per centum shall be paid out of the principal sum or estate so bequeathed or devised for life, or constituting the fund producing said annuity, and the remaining four (4) per centum due from collateral kindred or strangers to the blood shall be paid out of the said principal sum or estate at the expiration of the particular estate or annuity. * * *" As we read the statute it specifically makes the tax, where an estate is devised for life with remainder over, payable from the principal or corpus of the estate. Under such a plan both the life tenant and the remainderman pay the tax. We approve a like holding in Wachovia Bank & Trust Co. v. Lambeth, 213 N.C. 576, 197 S.E. 179, 117 A.L.R. 117. The action of the trial court is correct on this point.

◼ The appellant next objects to the allowance of the item of $4,851.65 on account of a judgment rendered on stock assessment made against stock in the First National Bank, which stock was owned by decedent and held in his estate. This item was not included in the objections to the final report and we do not find it was questioned sufficiently at the hearing to enable us to say it was litigated. It is true it was included in the requested findings, but we have a finding of fact which has not been attacked to the effect there was no market for the stock from the time it

came into the hands of the executrix until the bank closed its doors approximately one year later. The claim of error as to the bank stock is denied.

In the objections to the final report the appellant protests the allowance against corpus of $5,600 for remodeling and repairing business property in Las Vegas in addition to $6,366.55 for undesignated repairs to Las Vegas realty, but in its requested findings of fact and conclusions it attacked only the following expenditures on two properties: Wall in cellar, toilet and bath, new roof and sewer assessment at 7th & Main and the item of new roof at alleged cost of $1,050 at Bridge Street store.

The wall in the cellar was found to be a permanent improvement to the trust property and such finding is not attacked. The expenditures for the toilet and bath and the $185 item for a new roof were disallowed. The appellant conceded the payment of the sewer assessment in the sum of $177.32 was properly charged to principal. We are unable to find the item of $1,050 for the new roof on the business building in the report or any reference to it in the record. The trial court found on substantial evidence that it was necessary to remodel the business building in order to keep it rented, and charged the total expense to principal. Likely the item of $1,050 was included therein, but we find nothing in the record which would justify us in directing it to be disallowed.

In so disposing of these allowances we do not contradict the universal rule that ordinary repairs to trust property must be paid from income while capital improvements are payable from principal. 54 Am. Jur. (Trusts) Sec. 359, pp. 283, 284; 2 Scott on Trusts, Secs. 233.2, 233.3; 4 Bogert, Trusts and Trustees, Sec. 803. But the condition of this record is such that it is impossible to determine anything about the item of $1,050 for the new roof.

The appellant asks us to charge the taxes paid on nonproductive real estate to income, but as this objection was not presented to the trial court it may not be raised here.

The judgment of the trial court allowing a part of the secretarial expense is reversed with directions to charge it to the former executrix, Carrie Winternitz. It is affirmed in all other respects.

The appellant will recover its costs.

It is so ordered.

LUJAN, C. J., and SADLER and COMPTON, JJ., concur.

COORS, J., not participating.