HARVARD TRUST COMPANY, trustee, *vs.* ELIZABETH M. DUKE & others.

Middlesex.    January 5, 1939. — November 29, 1939.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & COX, JJ.

*Trust,* Capital and income, Taxes.    *Capital and Income.*

Taxes on nonproductive real estate belonging to a trust set up by a will should be paid from principal where the real estate had been productive at the time of the testator's death and for many years thereafter and the will, which directed that the income of the trust should be paid to a life beneficiary subject to the trustee's discretion and that the principal should be paid to others upon the life beneficiary's death, made no provision for the event of the real estate becoming nonproductive and there was nothing to show that the testator anticipated such a situation.

PETITION, filed in the Probate Court for the county of Middlesex by the trustee under the will of Leander Greely, late of Cambridge, for the allowance of the eleventh account.

From a decree entered by *Monahan, J.*, the accountant and the respondent Duke appealed.

*W. Noyes*, stated the case.

*K. A. Campbell, Jr.*, for the respondent Elizabeth M. Duke.

*R. B. Coolidge*, (*P. J. Woodward & F. L. Wiegand, Jr.*, with him,) for the respondents Mellen G. Calderwood and others.

*J. B. Kehoe*, for the respondent Minnie A. Noyes.

QUA, J.    The disputed items of the trustee's account represent sums paid for taxes upon land on Broadway in Cambridge for the years 1934, 1935, and 1936. It is stated in the report of material facts that the "sole question before the [Probate] Court was whether said taxes . . . should be charged against principal or charged against income." The question arises between the respondent Duke, who is the granddaughter of the testator and now entitled to receive during her life "the whole or such part of the income . . . as in the judgment of my said Trustees . . . may seem reasonable and proper," and heirs of the testator's brother and sisters, who are remaindermen. The will gives the trustee full authority to sell real estate "at such times and on such terms as to . . . [it] may seem expedient." The Probate Court ordered these taxes charged against income.

The testator owned this land at his death in 1891. It has continued in the trust ever since. The testator had erected industrial buildings upon it and at the time of his death the property was productive of income. Under the management of the present trustee it was highly productive until 1927, when the city took by eminent domain a substantial strip of land along the entire frontage, resulting in the condemnation and demolition of the two main buildings. Since that time the remainder of the property has produced a small income in some years and none at all in other years. For several years prior to the present accounting the taxes have been exceeding the income by about $1,500 a year. The entire corpus of the estate held in trust amounts at book value to approximately $100,000, of which $40,000 is represented by this real estate. It now requires

more than half of the total gross income of the personal property of the trust to pay the taxes on this nonproductive realty. If the net income of the $60,000 of personal property should fall to slightly below three per cent, as it might under conditions now prevailing, the life tenant would be left with no income at all. The trustee, although it has exercised due diligence and sound judgment, has not yet effected a sale of this land.

Whether expenses of a trust should be charged against principal or income is, of course, a matter to be determined by ascertaining the intent of the testator or settlor as expressed or implied in the will or settlement. If these documents fail to reveal an intent, resort has been had to the "presumed" intent. This is but another way of saying that the instrument is to be interpreted reasonably so as to effectuate its main object. In this case the respective parties have convinced themselves that expressions in the will, taken in connection with the circumstances of the testator's life, indicate an intent favoring their respective contentions. We do not share in the belief of either side. In our opinion the will fails to disclose any actual intent on the part of the testator as to the manner in which the accounts of his estate should be made up under the present conditions, which in all probability he never contemplated, and which may well have been beyond the scope of his imagination. The only intent which we have been able to discern, beyond mere conjecture, is that his granddaughter should have the income during her life, subject to the trustee's discretion, and the testator's brothers and sisters or their heirs the principal after the granddaughter's death. We should strive for a reasonable result which will be consistent with this intent and which will promote and not hamper its accomplishment.

Where a will contains no indication to the contrary taxes upon the real estate of a trust, in accordance with general commercial theory and practice, are commonly chargeable to income. *Jordan* v. *Jordan*, 192 Mass. 337, 344, and cases cited. But this is not a universal rule. We think that the true principle, at least where an unproductive in-

vestment not known as such to the testator becomes a burden upon the estate, is indicated by *Stone* v. *Littlefield*, 151 Mass. 485, 487–488, where, in holding that the loss must fall upon principal, the court said: "Otherwise, a loss upon some one investment, for which no one would be legally responsible, might absorb the widow's whole income for the year, or even more. It is more just that a loss of · this description should be held to diminish the corpus of the trust estate, so that the life tenant will receive less income, and the remainderman less principal." Again in *Ogden* v. *Allen*, 225 Mass. 595, at page 597, we said: "While the rule is settled, that generally taxes, interest and other expenses are to be charged to and payable out of income, it also is held that, where the property is unproductive and yields no income, such expenses are chargeable to principal, as otherwise the whole income might be used in the payment of such expenses and the life tenant receive nothing." This statement is in line with the decision in *Edwards* . v. *Edwards*, 183 Mass. 581, where the court, speaking through Chief Justice Knowlton, held that the will showed an intent of the testator that unproductive real estate should be treated as converted into productive property as of the date of his death. See also *Kinmonth* v. *Brigham*, ، 5 Allen, 270. A rigid application of the general rule where it might result either in the life tenant being deprived, perhaps for years, of income from the productive portions of the estate in order that that income might be diverted to preserve an unproductive asset for the primary benefit of the remaindermen would not be consistent with the testator's expressed intent that the life tenant should have the income. Its effect upon the life tenant might be devastating, particularly under conditions now existing, when it is often necessary, as in the case at bar, to hold nonincome producing property for a long period before a fair sale can be had.

It is urged upon us that to charge these taxes against principal would be contrary to the decisions in *Green* v. *Crapo*, 181 Mass. 55, 60 *et seq.*, *Jordan* v. *Jordan*, 192 Mass. 337, 344, 345, 346, and *Creed* v. *Connelly*, 272 Mass. 241.

We think it would not be contrary to what is actually decided in those cases.  In *Green* v. *Crapo* the will contained a direction to the trustee to pay "all taxes" before ascertaining the net income payable to the life tenant.  The decision is rested primarily upon this language, although other considerations, not present in the case at bar, seem ·to have played some part in the result.  In the *Jordan* and *Creed* cases the real estate was unproductive at the time of the testator's death, and yet, presumably with full knowledge of that fact, he included it in the trust without making any provision either for the conversion of the real estate into income producing property or for shifting the burden of taxes.  These cases proceed upon the supposed intent of the testator that the general rule should apply to a situation of which he had full knowledge and which he must have expected might continue.  To the same effect is *Parkhurst* v. *Ginn*, 228 Mass. 159, 169–170.  The case of *Mahoney* v. *Kearins*, 282 Mass. 130, is entirely different.  There the real estate was actually occupied by the two beneficiaries who were charged with the taxes.

We think that where, as here, the property became unproductive after the death of the testator, and where there is nothing to show that he anticipated that event, and where he made no provision for it, his dominant purpose to give the income of the trust to the life tenant should prevail over any assumed intent that if such a thing should occur the usual method of accounting should still continue at the expense of the life interest.  When in such a case a formerly productive asset has, since the death of the testator, become definitely unproductive of net income, so that it has become the trustee's duty to sell it as soon as a fair sale can be had (see *Jordan* v. *Jordan*, 192 Mass. 337, 345; Am. Law Inst. Restatement: Trusts, § 240), taxes and carrying charges thereafter accruing in excess of any income received should be paid, in the first instance, out of principal.  This is in accord with recent decisions upon similar facts in other jurisdictions.  *Hudson County National Bank* v. *Woodruff*, 122 N. J. Eq. 444, 448–449, modified, 123 N. J. Eq. 585.  *Matter of Rowland*, 273 N. Y. 100.  *Matter*

of Otis, 276 N. Y. 101. *Nirdlinger's Estate,* 331 Penn. St.
135. See *Hite's Devisees* v. *Hite's Executor,* 93 Ky. 257;
*Poole* v. *Union Trust Co.* 191 Mich. 162, 180; *Minnesota
Loan & Trust Co.* v. *Moore,* 185 Minn. 342; *Patterson* v.
*Old Dominion Trust Co.* 149 Va. 597, 613. This whole sub-
ject is discussed at length with citation of cases in Scott
on Trusts, §§ 233.4, 241.1–241.3. See Am. Law Inst. Re-
statement: Trusts, § 233, Comment m.

Questions of apportionment of the proceeds which may
arise when this property is sold are not now before us. See
*Edwards* v. *Edwards,* 183 Mass. 581. Am. Law Inst. Re-
statement: Trusts, § 241.

The decree is reversed and a decree is to be entered in
accordance with this opinion. Costs of this appeal as be-
tween solicitor and client are to be in the discretion of the
judge of probate.                    *Ordered accordingly.*