WILLIAM O. TAYLOR & others, trustees, *vs.* MARION BENTINCK-SMITH & others.

Suffolk.    May 5, 1939. — November 29, 1939.

Present: FIELD, C.J., QUA, COX, & RONAN, JJ.

*Trust*, Taxes, Income beneficiary.

If there is a change during a year in the beneficiary entitled to the income of a trust, the burden of the tax assessed on January 1 of that year on real estate of the trust should be equitably apportioned.

The trustee under a will directing payment of income to a certain beneficiary during his life and after his death to others need not so withhold income from the first beneficiary as to have available on each January 1 a sufficient sum to meet in full the taxes then assessed upon real estate of the trust, but, whenever it reasonably shall appear to be necessary, he may withhold out of income a sum consistent with good faith and good judgment as a reserve for the expected payment of taxes.

PETITION, filed in the Probate Court for the county of Suffolk on December 22, 1938, by the trustees under the will of Eben D. Jordan, late of Boston, for instructions.

Provisions of the will of Eben D. Jordan material to this decision in substance established a trust of the residue of the estate and divided the trust estate into four "general shares," each to be held during the continuance of the trust for the benefit of one of the four children of the testator and the issue of each child, *per stirpes,* and directed the trustees to "collect and receive the income from such general share and after paying from the income of such general share, all taxes and other charges incident to such general

share including a reasonable compensation to the trustees for the time being for their services in respect to such general share, to pay the residue of the income of such general share to the son or daughter of mine for whose benefit such general share is held in trust semi-annually or quarter yearly so long during the period of suspension hereinafter mentioned as the son or daughter for whose benefit such general share is held in trust shall live, and upon the death of such son or daughter during said period of suspension, to continue to hold the general share which was held in trust for the benefit of such son or daughter, in trust for the benefit by right of representation of the lawful issue of such son or daughter . . . and for the benefit by right of representation of the survivors and survivor of such issue so long during such period of suspension as such issue shall live" and such issue "shall receive by right of representation the same share of said income semi-annually or quarter yearly," which such son or daughter would have received if living. "Said period of suspension shall be and continue from the time of my death during the lives of such of my lawful descendants as shall be living at the time of my death and during the lives and life of the survivors and survivors of them and for twenty years after all of them shall have died, whether such descendants living at the time of my death shall be a child or children and grand child or grand children and great grand child or great grand children and more remote issue of mine, or shall embrace less generations."

At the time of the filing of the petition, two grandchildren of the testator were each entitled to a one-third interest in the income of the trust and one grandchild and one great grandchild to a one-sixth interest each.

Averments of the petition were: "The holders of present life interests aforesaid in the current income and the persons now holding succeeding life interests in expectancy have made conflicting contentions to the trustees as to whether or not any of the gross income is at any time to be deemed under this will to be distributable income until there is enough of such gross income accumulated in the

hands of the trustees to pay the taxes payable on the ensuing first day of July and first day of October in each year, and as to whether after such accumulation has taken place anything is to be deemed distributable income except the excess over the amount required for the payment of taxes so becoming payable. . . .

"The time has arrived at which your petitioners should proceed to act in respect to all the foregoing matters. If the petitioners are to retain none of the gross income on December 31, 1938, to meet the taxes assessable as of January 1, 1939, payable July 1 and October 1, 1939, there will be substantial amounts for distribution on December 31, 1938. If the gross income otherwise distributable December 31, 1938, is applicable to the payment of taxes payable July 1, 1939, and October 1, 1939, for taxes to be assessed as of January 1, 1939, there will be no income to distribute as of December 31, 1938. If this gross income is distributed December 31, 1938, the prospect is that it will require the greater part of the gross income for the first six months of 1939 to provide for the taxes to be assessed as of January 1, 1939, payable July 1 and October 1, 1939."

The prayer of the petition was for instructions "as to whether or not henceforth" the trustees "should make no distributions of income except such as will leave in hand sufficient remaining income with which to pay the taxes becoming payable on the ensuing July 1 and October 1 of each year, and as to what are the duties of your petitioners in the premises, and as to whether or not it is open to the petitioners to determine any of these matters in the exercise of their own judgment and discretion."

The case was heard by *Dillon*, J., and on April 17, 1939, a decree was entered "(1) That the respondents who were living on January 1, 1939, are charged with the payment of the taxes assessed to the trustees on the real estate held in the trust on or as of that day in proportion to their interests. . . . (2) That the trustees are instructed that in succeeding years the taxes assessed to the trustees on the real estate held in the trust on January 1 are a charge upon the beneficiaries of the trust who were living on that day

and entitled to the income.  (3) That the petitioners are instructed that as a matter of law they should make no distribution of the balance of the 1938 income in their hands on December 31, 1938, or of income received by them in 1939, except such as will leave in their hands a sufficient amount of income to pay in full the taxes assessed to the trustees on the real estate held in the trust on or as of January 1, 1939, and they are further instructed that thereafter so far as possible they should have in their hands on January 1 of each succeeding year and retain so far as may be necessary an amount of income sufficient to pay the taxes assessed to the trustees on the real estate held in the trust on that day."

. The income beneficiaries living at the date of the decree appealed.

*H. T. Davis,* stated the case.

*J. Noble,* for the respondents Dorothy Jordan Chadwick and another.

*R. Spring,* (*G. E. Mears & F. G. Moulton* with him,) for the respondent Marion Bentinck-Smith.

*L. Bryant,* for the respondent Talbot Baker.

*J. B. Dolan,* guardian *ad litem, pro se.*

QUA, J.  The petitioners as trustees under the will of Eben D. Jordan, late of Boston, ask instructions as to whether in making among income beneficiaries distributions of income, which they have been accustomed to make on or about March 31, June 30, September 30 and December 31 of each year, they should retain in hand sufficient remaining income with which to pay the annual taxes on real estate of the trust.

These taxes are assessed on January 1 of each year and become payable on July 1 and October 1.  They now amount to more than a third of the expected gross income from all of the principal of the trust.  It apparently takes the greater part of the income accruing in the first six months of each calendar year to pay the taxes in July and October.  If the income otherwise available for distribution on December 31 is retained to meet taxes assessed to the trustees on the immediately following first day of January no income will

be left for distribution in December. The trustees fear that under the decision in *Holmes* v. *Taber*, 9 Allen, 246, it may be their duty to see to it that taxes assessed as of January 1 are charged to the several life beneficiaries who are alive on that particular day, and that as the trustees can never be sure that any beneficiary will live long enough after January 1 to accumulate sufficient income to pay his share of the taxes, it may be the trustees' duty to keep on hand sufficient income out of that accruing before January 1 to pay the taxes to be assessed on that day.

The judge of probate in entering a decree in accordance with the trustees' fears doubtless felt himself bound by the decision in *Holmes* v. *Taber*. In that case it was held that the whole burden of the annual tax assessed as of May 1, 1860, on personal property of the trust should fall on the life beneficiary who was living on that day, although she died on the 22nd of the same month. It is stated in the opinion that the tax "was properly assessed to the estate in the hands of the surviving executor" of the testator who had created the trust. That executor seems to have been acting as trustee. It was provided by Rev. Sts. (1836) c. 7, § 10, Fifthly, that personal property held in trust should be assessed directly to the income beneficiary or to her husband, if she were a married woman, in the town in which the beneficiary resided, and that it should be assessed to the executor or trustee only when the life beneficiary resided out of the State. This law was not changed so as to levy the assessment upon the fiduciary until the General Statutes of 1860 took effect from and after May 31, 1860. Gen. Sts. c. 11, § 12, Fifth. Gen. Sts. c. 181, § 2. This was after the assessment date for 1860, which date was May 1, when the income beneficiary was still alive. The assessment may have been made to the executor as upon undistributed estate of the testator under Rev. Sts. c. 7, § 10, Seventhly. Or possibly the General Statutes may have been deemed controlling on the ground that they took effect before the valuation and assessment list was actually made up. It is not easy at this distance to determine the exact nature of the assessment with which the court was dealing in *Holmes* v. *Taber*, but

the opinion reads almost as if the income beneficiary had been, in legal contemplation, the property owner to whom the tax had been directly assessed. The statutory history to which reference has been made shows how near this came to being the fact at that time. At any rate, the analogy between an assessment upon a legal owner and an accounting charge against an equitable life interest must have seemed much closer when *Holmes* v. *Taber* was decided than it can be made to appear today, when the principle of assessment of both real and personal property to the fiduciary as owner and his personal liability for the tax have long been established. G. L. (Ter. Ed.) c. 59, § 11, as amended, § 18, as amended. *Richardson* v. *Boston*, 148 Mass. 508. *Crocker* v. *Malden*, 229 Mass. 313, 314. This may account for the form of the opinion in *Holmes* v. *Taber* and for the lack of more extended discussion in that case of the principles involved in trust accounting.

In any view of *Holmes* v. *Taber* it must be admitted that that case leaves unsolved very practical difficulties sure to arise. It seems to require that the trustee, as a matter of self protection, hold back from the life beneficiary during considerable portions of each year, for the payment of the taxes for the following year and long before such taxes are due, substantial sums for which the life beneficiary will never become chargeable unless he lives until the next assessment date. It makes no provision at all for a case where a life tenant entitled to the income on the day of assessment does not live long enough to accumulate the sum required to pay a year's taxes. To deny any apportionment in such a case would result in leaving the tax in part unprovided for, unless the estate of the life beneficiary should be held liable for a tax greater than any income to which he became entitled — a liability for which there would seem to be no legal basis. The deceased beneficiary might leave no property, so that the trustee might even be forced to shoulder the burden out of his own personal funds, if the collector should see fit to bring an action against him for the tax. G. L. (Ter. Ed.) c. 60, § 35, as amended. The trustee might even be liable to arrest upon a collector's warrant. G. L. (Ter. Ed.) c. 60,

§ 29. At the very least inequalities would arise in the treatment of successive beneficiaries whom the testator intended to treat alike. The court could hardly have intended all of these consequences. In *Holmes* v: *Taber* the fiduciary happened to have on hand more than enough income belonging to the life beneficiary to pay the tax, so that no complication arose, but that circumstance is slender ground for a distinction in principle. That case has never been cited by this court for the proposition that in accounting for the administration of a trust taxes could never be apportioned among beneficiaries. The issue in *J. L. Hammett Co.* v. *Alfred Peats Co.* 217 Mass. 520, was entirely different. There is comparatively little authority on the point in courts of last resort, and this is not uniform. See *Rhode Island Hospital Trust Co.* v. *Harris,* 20 R. I. 408, 409; *Industrial Trust Co.* v. *Wilson,* 58 R. I. 378, 383, 385; *McCook* v. *Harp,* 81 Ga. 229; *Will of Jenkins,* 199 Wis. 131, 138. Such reported cases from lower courts as we have seen are also divided. See citations collected in Scott on Trusts, § 237.

The considerations hereinbefore mentioned will ultimately compel the recognition of some form of apportionment by which the burden of the tax will fall equitably upon those for whose benefit the property is to be rescued from sale. In our opinion the true rule is that stated in the American Law Institute's Restatement of Trusts, § 237, "Except as otherwise provided by the terms of the trust, if property is held in trust to pay the income to a beneficiary for a designated period and thereafter to pay the principal to another beneficiary, expenses which would have been chargeable to income if they had been incurred with respect to a period wholly within the designated period are apportionable when they are incurred with respect to a period only partially within the designated period . . . ." The principle of this rule is also applicable as between two successive income beneficiaries. § 237, Comment c. This rule is in accordance with that applied to interest payable upon a mortgage, although the two cases are not altogether parallel. *Welch* v. *Apthorp,* 203 Mass. 249, 254. It is consistent with, and complementary to, the rule now prevailing by which income

is apportionable between successive beneficiaries.  G. L. (Ter. Ed.) c. 197, § 27.  *Welch* v. *Apthorp*, 203 Mass. 249. *Welch* v. *Brown*, 283 Mass. 467, 474.  *National Shawmut Bank of Boston* v. *Morey*, 301 Mass. 37.  See as to a betterment assessment *Plympton* v. *Boston Dispensary*, 106 Mass. 544.  We may add that, although there has been some argument to the contrary, we find nothing in the Jordan will itself indicating any intent of the testator against apportionment in accordance with this rule.

This decision does not affect the general proposition that annual taxes are chargeable against income rather than capital further than to recognize a partial exception in instances where an equitable estate for life or other designated period terminates during the tax year, followed by a remainder, and apportionment is required between them.  See *Harvard Trust Co.* v. *Duke, ante,* 414; Am. Law Inst. Restatement: Trusts, § 233, Comment e.  It does not apply as between successive legal estates.  *Spring* v. *Hollander,* 261 Mass. 373.  *Thayer* v. *Shorey,* 287 Mass. 76, 81.  It is not inconsistent with the legal theory that as between the taxing authority and the taxpayer the assessment is not for a period of time, but is a single instantaneous event. *Koshland* v. *American Woolen Co.* 289 Mass. 308, 311.  *Miller* v. *Wadsworth, Howland & Co. Inc.* 296 Mass. 172, 174.  It does not prevent, in this or other cases, the accumulation of a reasonable reserve from income otherwise payable to income beneficiaries but needed to meet anticipated payments which it is expected will become chargeable to such beneficiaries.  *Shirk* v. *Walker,* 298 Mass. 251, 260–262. Am. Law Inst. Restatement: Trusts, § 182, Comment b.

The result is that the decree must be reversed, and a decree must be entered instructing the trustees that they are not restricted in making distributions of income to such amounts as will leave in hand sufficient remaining income to pay the taxes becoming payable on the ensuing July 1 and October 1 of each year, but that, nevertheless, they may, whenever it reasonably appears to be necessary, withhold out of income a sum consistent with good faith and good judgment as a reserve for the expected payment of the annual taxes out of

income. Any costs that may be allowed in the new decree as between solicitor and client in accordance with the principles referred to in *Lewis* v. *National Shawmut Bank of Boston*, 303 Mass. 187, 191, and cases there cited, may, in the discretion of the Probate Court, include such costs in connection with this appeal.

*Ordered accordingly.*