GEORGE M. AMERIGE & another, trustees, *vs.* EDWARD S. E. GODDARD & others.

Suffolk. October 7, 1943. — June 27, 1944.

Present: FIELD, C.J., LUMMUS, QUA, RONAN, WILKINS, & SPALDING, JJ.

*Trust,* Retention of assets, Capital and income, Upkeep of real estate. *Devise and Legacy,* Retention of trust assets.

A will giving certain productive real estate and other property in trust to be held "as one entire and undivided trust fund," stating the testator's wish that the real estate "be kept as a part of the trust property during the continuance of this trust," authorizing the trustees to pay taxes and other running and maintenance expenses of that real estate "from the income from said estate" "the better to enable the trustees to retain that property entire until the termination of the trust," and empowering the trustees to sell "any real . . . property of the trust," did not show any desire of the testator that the real estate be retained in the trust even though it should become unproductive; that contingency was not covered.

Pending a sale of certain real estate held in trust under a will, which had been productive at the time of the testator's death and for many years thereafter but had become unproductive, a deficiency of income thereof to satisfy taxes and other running and maintenance expenses should be charged to principal, and income from other trust property should not be used therefor, in the absence of any provision in the will covering the contingency of the real estate becoming unproductive.

Respecting real estate held in trust under a will directing payment of the income "in each and every year" to certain beneficiaries, where the real estate until July in a certain year had produced a substantial net income and produced some net income for that year as a whole, although for the remainder of the year after July, because of termination of an advantageous lease, the income was insufficient to meet taxes and expenses and the real estate became definitely unproductive at the end of the year, the income beneficiaries were entitled to the net income for the entire year.

Upon injury to a building held in trust and payment to the trustee of compensation for the injury in an amount greater than the cost of the repairs made, the excess should be credited to principal whether or not the building was fully restored by the repairs.

PETITION, filed in the Probate Court for the county of Suffolk on December 1, 1942.

The case was heard by *Mahoney,* J.

In this court the case was argued at the bar in October, 1943, before *Field*, C.J., *Lummus, Cox, & Ronan*, JJ., and after the retirement of *Donahue & Cox*, JJ., was submitted on briefs to *Qua, Wilkins, & Spalding*, JJ.

*R. H. Wiswall*, stated the case.

*V. Taylor*, for Edward S. E. Goddard and others.

*J. B. Dolan*, for the guardian ad litem.

LUMMUS, J. The trustees under the will of Harriot M. Goddard, who died on June 9, 1910, and whose will was proved soon after, bring this petition for instructions with respect to the allocation of receipts and expenses to capital or income. The case comes here upon an appeal by the life beneficiaries from a decree of the Probate Court.

By her will the testatrix gave the residue of the estate, both realty and personalty, to trustees to hold and invest "as one entire and undivided trust fund" until the death of the last survivor of her daughter Mrs. Sprague and seven grandchildren. One half of the income was made payable "in each and every year" to Mrs. Sprague for her life, and at her death to her issue by right of representation. Mrs. Sprague has died, leaving five children, all of whom are still living. The other half of the income was made payable "in each and every year" to two other grandchildren of the testatrix, Edward S. E. Goddard and Elizabeth Goddard, in equal shares, for life. Elizabeth Goddard has died without issue, and in that event the will provided that her share of the income should become payable to Edward S. E. Goddard for his life. Accordingly, Edward S. E. Goddard is now entitled to one half of the income of the trust, and the five children of Mrs. Sprague are entitled to one tenth each.

Upon the termination of the trust, at the death of the last survivor of the present life beneficiaries, the testatrix provided that the principal of the trust property "shall go to my issue then living, such issue taking by right of representation." That obviously is a contingent gift, and the persons who will take cannot be ascertained until the moment of the termination of the trust. *Robertson* v. *Robertson*, 313 Mass. 520, 526, 527–528. *Tyler* v. *City Bank*

*Farmers Trust Co.* 314 Mass. 528, 532, et seq. *National Shawmut Bank* v. *Joy,* 315 Mass. 457, 467. *Barker* v. *Monks,* 315 Mass. 620. For that reason there was appointed a "guardian ad litem or next friend" for minors, persons not ascertained, and persons not in being, who are interested in the remainder as issue of the testatrix. He filed an answer for them, and argued for them in this court.

The controversy arises upon the following facts. At the outset the trust property consisted of (a) the dwelling house of the testatrix at 291 Marlboro Street in Boston, the equity of redemption in which was valued at $9,500, (b) a building containing stores and offices at 168 Tremont Street in Boston, and (c) $3,526.77 in money. A few years later the dwelling house was sold and the proceeds were invested in securities. On January 1, 1942, the account of the trustees showed the building on Tremont Street at an appraised value of $178,500, securities of the par value of $29,000, and $529.70 in money. Until July 31, 1941, when an advantageous lease of a store in the Tremont Street building terminated, the trust had an annual net income ranging from $12,500 to $27,500, and substantial annual distributions of income were made. But no income has been distributed since January 1, 1941.

In 1941 the gross income from the building was $14,081.10, and the expenses of the building, including local taxes for 1941, were $12,895.98, leaving a net income of $1,185.12. Of the gross income, only $1,430.28 was received after July 31. Of the expenses, $6,737.82 (including a balance of the 1941 tax not paid by the outgoing tenant, amounting to $3,828) was attributable to the period after July 31. It thus appears that after July 31 the building ceased to produce enough income to pay the taxes and expenses on it, and that the deficiency was large. The local tax on the building for 1942 amounted to $9,512, and in order to pay it the trustees sold securities of the trust. The petition was filed on December 1, 1942, and the agreed facts were filed on February 15, 1943. The record does not show the later financial condition of the trust, but there is no suggestion of possible improvement.

The instructions contained in the decree of the Probate Court are shown in a footnote.[1] In general, the decree provided that all undistributed income as well as all current income of the trust was to be used to pay taxes and expenses on the building, until it should be sold, and that any deficiency of income for that purpose was to be made good by a loan from principal to be repaid out of income.

[1] "1. The petitioners shall charge the city of Boston real estate tax for the year 1941 upon the property located at 168 Tremont Street first against income in their hands derived from said parcel of real estate, and if such be insufficient then against other income from the trust property; and if after such income has been exhausted there shall still be a deficiency of the amount of said real estate tax, such deficiency shall be charged against the principal of the trust property as a loan from principal to income, to be repaid out of available income thereafter accruing from whatever source. 2. The petitioners shall charge the city of Boston real estate tax for the year 1942 upon the property located at 168 Tremont Street first against income in their hands derived from said parcel of real estate, and if such be insufficient then against other income from the trust property; and if after such income has been exhausted there shall still be a deficiency of the amount of said real estate tax, such deficiency shall be charged against the principal of the trust property as a loan from principal to income, to be repaid out of available income thereafter accruing from whatever source. 3. Income received by the trustees from trust property other than the real estate situated at 168 Tremont Street in Boston is available for and may be used by the trustees to meet any deficit resulting from the excess of expenses of maintenance and operation, including taxes, over the gross income derived from said real estate. 4. Any deficit resulting from the maintenance and operation, including taxes, of the real estate located at 168 Tremont Street in Boston shall be met first from other income of the trust property, including any reserves in the hands of the trustees which may be available for the purpose, and if that be insufficient such deficiency shall be charged against the principal of the trust property as a loan from principal to income, to be repaid out of available income thereafter accruing from whatever source. 5. The balance of income as of December 31, 1941, in the hands of the trustees shall be used toward the repayment to principal of the amount expended from the principal of the trust fund for the payment of the 1942 Boston real estate tax on the property at 168 Tremont Street. 6. The trustees are authorized in their discretion to retain in their hands from time to time such reasonable reserves from the income of the trust property as they may deem necessary or advisable to meet anticipated expenses for the maintenance and operation of the real estate located at 168 Tremont Street in Boston, including taxes. 7. The amount in the hands of the trustees representing the unexpended balance of funds received by them from the lessee of the building at 168 Tremont Street in Boston on account of damage to said building shall be credited to the principal of the trust property. 8. The trustees have the power to sell or dispose of the real estate located at 168 Tremont Street in Boston at such times and upon such terms as they may deem advisable for the best interests of the trust. 9. The foregoing instructions are given without prejudice to the right of the petitioners or their successors in said trust to ask further instructions of this court, in the event that the real estate located at 168 Tremont Street in Boston shall be sold, with regard to the apportionment or disposition of the proceeds of such sale, or with regard to any revision or other disposition of any charges against principal which may then be carried, in accordance with the terms of this decree, as a loan from principal to income on account of the expenses of maintenance and operation, including taxes with respect to said real estate."

A balance on hand of $781.71, resulting from compensation paid in 1942 by a former tenant of the building for injury done by him to the building, over and above the cost of repairs made out of the compensation paid, was ordered credited to principal. The decree declared that the trustees "have the power" to sell the building. In the event of sale the apportionment of the proceeds was to be the subject of a petition for further instructions.

In support of their appeal the life beneficiaries contend that (1) the taxes and expenses of the building after July 31, 1941, over and above the income of the building, should be charged permanently against principal without repayment out of income, (2) the net income from securities should be distributed as income, (3) the net income received before July 31, 1941, when the building ceased to pay its way, should be distributed as income, and (4) the balance of $781.71 already described should be distributed as income.

The only provisions of the will, not hereinbefore stated, that may be thought to indicate any actual intent of the testatrix, as distinguished from an intent "presumed" from the circumstances (*Harvard Trust Co.* v. *Duke,* 304 Mass. 414, 416), with respect to the questions at issue, are the following. "It is my wish that the estate numbered one hundred and sixty-eight (168) Tremont Street be kept as a part of the trust property during the continuance of this trust; and the better to enable the trustees to retain that property entire until the termination of the trust, I authorize the trustees or trustee for the time being to pay all expenses of ordinary repairs, taxes, insurance of all kinds, brokers' commissions, and all expenses of running and maintenance, from the income from said estate." Then followed this paragraph: "In case of earthquake, conflagration, or other exceptional damage, rendering necessary extraordinary repairs or a practical reconstruction of the building on said estate, I authorize the trustees or trustee for the time being, at their or his discretion, to make a power of sale mortgage of said estate for such amount as such exigency may require, or as they or he may deem desirable for

such extraordinary repair or rebuilding, and for such time and on such terms as they or he may deem meet." Full power to sell any real or personal property of the trust, at public auction or private sale, was given "to the persons . . . named by me as executors and trustees, and to each and either of them." Different persons are now trustees.

We take up the contentions of the life beneficiaries in their order.

1. Annual local taxes and other ordinary maintenance expenses of real estate are ordinarily chargeable against income. *Jordan* v. *Jordan,* 192 Mass. 337, 344. *Holcombe* v. *Ginn,* 296 Mass. 415, 416. *Taylor* v. *Bentinck–Smith,* 304 Mass. 430, 437. Compare *Ogden* v. *Allen,* 225 Mass. 595, 597. Where a trustee cannot be said to have come under a duty to convert into a productive investment a piece of unproductive real estate, either because of its insignificance in the trust or because of a provision for its retention, the taxes and other maintenance expenses of that real estate have been held properly payable out of the income of productive investments before paying the net income of the trust to the income beneficiaries. *Eldredge* v. *Heard,* 106 Mass. 579. *Jordan* v. *Jordan,* 192 Mass. 337, 345, 346. But that is exceptional, for "the inference is that the testator intended that the beneficiary entitled to income under the trust should receive income from all of the property held in trust, and that if any part of the property should not be productive of income it should be converted into income-producing property." Scott, Trusts (1939) § 240. Am. Law Inst. Restatement: Trusts, § 240. The same is true where the income of property is so small that it would be unfair to the income beneficiary to retain it. *Ibid.*

The present case does not require us to reconsider the problem that arose in *Creed* v. *Connelly,* 272 Mass. 241, where unproductive real estate constituted a considerable part of the trust property from the beginning. Compare with that case *Harvard Trust Co.* v. *Duke,* 304 Mass. 414, 417, 418; *McKechnie* v. *Springfield,* 311 Mass. 406, 410; Scott, Trusts (1939) §§ 233.4, 241.2; Loring, Trustee's Handbook

(5th ed. 1940) § 73. In the present case the building was very productive at the inception of the trust and remained so for more than thirty years. The will shows the high regard in which the testatrix held the building as a fruitful heritage for the issue of her grandchildren. Doubtless she did not foresee the economic changes that have made it a losing investment. The will expresses no desire that the building be retained even though unprofitable. The trustees have no means of doing that for long, even if the testatrix had so ordered. The utmost expressed desire of the testatrix was that the building be retained as a permanent investment, and "the better to enable the trustees to retain" it, that certain described maintenance charges be paid out of income. Nothing in the will indicates a willingness utterly to sacrifice near and doubtless dear descendants for the benefit of more remote descendants, some of whom the testatrix never saw. Scott, Trusts (1939) § 232. Am. Law Inst. Restatement: Trusts, § 232. *Lovering* v. *Minot*, 9 Cush. 151, 157. *Lannin* v. *Buckley*, 256 Mass. 78, 83. *Kingsley* v. *Spofford*, 298 Mass. 469, 477. The case stands substantially as it would have stood had the will provided simply for income to one set of persons for their lives with remainder to another set.

Thus considered, the case falls precisely within the principle of the recent cases of *Harvard Trust Co.* v. *Duke*, 304 Mass. 414, *Springfield Safe Deposit & Trust Co.* v. *Wade*, 305 Mass. 36, *McKechnie* v. *Springfield*, 311 Mass. 406, and *Union Trust Co.* v. *Dexter*, 311 Mass. 737. The recent statute on salvage operations as to mortgages (St. 1943, c. 389; *Demorest* v. *City Bank Farmers Trust Co.* 321 U. S. 36) has no application. In *Harvard Trust Co.* v. *Duke*, 304 Mass. 414, 418, it is said, "We think that where, as here, the property became unproductive after the death of the testator, and where there is nothing to show that he anticipated that event, and where he made no provision for it, his dominant purpose to give the income of the trust to the life tenant should prevail over any assumed intent that if such a thing should occur the usual method of accounting should still continue at the expense of the life interest. When in such a

case a formerly productive asset has, since the death of the testator, become definitely unproductive of net income, so that it has become the trustee's duty to sell it as soon as a fair sale can be had . . . taxes and carrying charges thereafter accruing in excess of any income received should be paid, in the first instance, out of principal." This duty to sell and, pending a sale, to charge to principal the deficiency of income to satisfy taxes and carrying charges, arose as soon as the building became "definitely unproductive" — in this case, we think, at the end of the year 1941. Am. Law Inst. Restatement: Trusts, § 241, comment b. Scott, Trusts (1939) §§ 230.2, 231, 241. *McInnes* v. *Whitman,* 313 Mass. 19, 28, 29.

After a sale has been made, an apportionment of the proceeds of the sale between capital and income will be in order. A discussion or decision at this time as to the principles of such apportionment would be premature. *Harvard Trust Co.* v. *Duke,* 304 Mass. 414, 419. *Springfield Safe Deposit & Trust Co.* v. *Wade,* 305 Mass. 36, 40, 41. *Union Trust Co.* v. *Dexter,* 311 Mass. 737, 743. *New England Trust Co.* v. *Morse,* 243 Mass. 39, 47.

Paragraph 8 of the decree below declares that the trustees "have the power to sell or dispose of the" building, apparently without any order of any court under G. L. (Ter. Ed.) c. 203, § 16, as amended. No party argues against that paragraph, and we treat any possible objection to it as waived. Consequently we express no opinion of our own upon the question.

2. The income from securities should not be used for the purpose of paying taxes and carrying charges upon the unproductive building. The apportionment after the sale will take into account the use of the principal of certain securities to meet taxes and carrying charges upon the building, and the consequent loss of income to the life beneficiaries. Each investment should have been made to stand or fall by itself, and neither the life beneficiaries nor the remaindermen should be allowed to suffer by the use of the securities to help the building. *McKechnie* v. *Springfield,* 311 Mass. 406, 414.

The provision of the will authorizing the trustees to pay taxes and expenses of the building "from the income from said estate" has no bearing, for in that provision the word "estate" means the building. Neither is the present point affected by the provision that the building and the other assets of the trust are to be dealt with "as one entire and undivided trust fund."

3. The net income received before December 31, 1941, and not merely that received before July 31, 1941, should be distributed as income. We have found that the building did not become "definitely unproductive" until the end of 1941. The tax for the whole year 1941 was a unit and was assessed before July 31, 1941. The will provided for a distribution of income "in each and every year." Taking 1941 as a unit, as we think we should take it, the building was not unproductive for that year. On the contrary there was a balance of income from the building at the end of that year of $1,185.12, after all taxes and carrying charges had been paid out of income. That balance should be paid to the life beneficiaries. *Union Trust Co.* v. *Dexter*, 311 Mass. 737, 742–744. The cases of *Shirk* v. *Walker*, 298 Mass. 251, 260, 261, and *Taylor* v. *Bentinck–Smith*, 304 Mass. 430, 437, allowing the retention of income as a reserve against future charges to income, do not apply, because after 1941 the taxes and carrying charges on the unproductive building were no longer properly chargeable to income.

4. The balance of $781.71 was paid to the trustees as reparation for injury to the building, which was part of the corpus of the trust. The details of the claim for reparation, appearing in the record, show that the building was never fully restored. The natural inference is that the building remained damaged to the extent of that balance. If, on the contrary, the building was fully restored, the balance is in the nature of a windfall. In either case that balance was properly credited to capital. *New England Trust Co.* v. *Eaton*, 140 Mass. 532, 537. *Old Colony Trust Co.* v. *Comstock*, 290 Mass. 377, 384.

The result is, that the decree must be reversed, and a

new decree is to be entered in accordance with this opinion. The substance of paragraphs 7, 8, and 9 of the decree below should be included in the new decree. Paragraph 1 will be omitted, for the taxes of 1941 have already been properly paid out of income for that year. The other numbered paragraphs of the decree below will be omitted for reasons herein stated. Other paragraphs are to be inserted for the purpose of answering, in accordance with this opinion, the questions upon which instructions are asked. The matter of costs and expenses of this appeal shall be within the discretion of the Probate Court.

*So ordered.*