CLAUDE S. MAGILL, trustee, *vs.* WILLIAM S. MAGILL & others.

Hampshire.    May 4, 1944. — September 14, 1944.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, RONAN, WILKINS, & SPALDING, JJ.

*Devise and Legacy,* "Family." *Family. Words,* "Family."

The proper construction of an entire will and codicils in the light of the circumstances surrounding their execution was that, in a provision establishing a trust in which a life interest was given to a granddaughter of the testatrix, daughter of her deceased son, and, at the

granddaughter's death and in the event of her death without issue, which occurred, the remainder interest was given to "the then living members of . . . [the son's] family," the quoted words, the widow of the son having died, meant the then living lineal descendants of the son, who were a child and four grandchildren, children of two deceased children; and the living child was entitled to receive only one third in distribution.

PETITION for instructions, filed in the Probate Court for the county of Hampshire on March 23, 1942.

The clause of the will of Helen Twining Magill establishing the trust described in the opinion was as follows: "To my granddaughter, Maud . . . [certain property]. All annual interest or income from said property to be for her personal benefit, use and disposal as long as she shall live; the principal to remain unexpended unless some misfortune or necessity on her part require its expenditure, for her benefit personally. No husband that she may ever have shall have any claim or control of any kind, at any time, either before or after her death to any of this property; but should she leave issue, such may share equally, at her death, with the then living members of her father's family, in the division of the principal."

A decree was entered by *Welch*, J., in part as follows: "And it further appearing, after a hearing and consideration of the will, codicils and the agreed statement of facts, that it was the intention of the testatrix that the distribution of the principal of the trust fund, should be in equal shares per stirpes among the lineal descendants of her son, William Alexander Magill, who would be living at the death of the life tenant, Maud . . .; it is ordered and decreed that said principal of the trust fund be distributed in the following shares to the following designated persons": one third to the respondent William S. Magill; one sixth each to the respondents Claude S. Magill and Ruth M. Foote, children of Claude A. Magill; and one sixth each to the respondents Helen M. Ziebarth and Eunice W. Eaves, children of Arthur E. Magill. William S. Magill appealed.

The case was submitted on briefs on May 4, 1944, to *Field*, C.J., *Qua*, *Ronan*, *Wilkins*, & *Spalding*, JJ., and afterwards was submitted on briefs to all the Justices.

*A. J. Morse & A. D. Morse,* for the respondent William
S. Magill.

*N. M. Suprenant,* for the respondents Ruth M. Foote
and others.

RONAN, J.  This is a petition for instructions as to the
distribution of a trust fund created by the will of Helen
Twining Magill for the benefit of her granddaughter, Maud
Helen Magill, which upon the death of the latter without
issue was to go to "the then living members of her [Maud's]
father's family."  The Probate Court instructed the trus-
tee to pay one third of the fund to her brother William S.
Magill.  He appealed, contending that he was the only one
of his father's family who survived Maud and that he was
therefore entitled to the entire fund.

The testatrix, after the death of her husband in 1884,
continued to reside at the homestead until her death in
August, 1905.  Her only child, William Alexander Magill,
who had married and had four children, came with his
wife and daughter to the home of his mother, and these
three lived with her until the death of the son in November,
1899.  The son was survived by a widow, Matilda S. Magill,
the daughter, Maud, and three sons, William S., Claude
A. and Arthur E.  At the time the testatrix executed her
will, Matilda and Maud were living with her, but the three
grandsons were living elsewhere.  Matilda died in 1908.
Maud died without issue in 1941.  Her brothers Claude and
Arthur had predeceased her, each leaving two children, who
are the appellees.  Her brother William S. Magill survived
her.

The testatrix, Helen Twining Magill, a widow, executed
her will in 1900.  It consisted of two parts.  In the first
part, which related entirely to property formerly owned by
her husband, she disposed of this property by giving four
thirteenths to the heirs of her son, William Alexander Ma-
gill, three thirteenths to her granddaughter, Maud Helen
Magill, and two thirteenths to each of her three grandsons.
This part of the will was unaffected by two codicils which
she later executed.  The second part of her will disposed of
her own property as distinguished from that which had

belonged to her husband. She first created a trust giving the income to her granddaughter, Maud, for life, with the right to use the principal if necessary, and providing that "No husband that she may ever have shall have any claim or control of any kind, at any time, either before or after her death to any of this property; but should she leave issue, such may share equally, at her death, with the then living members of her father's family, in the division of the principal." The testatrix gave a legacy to each of two grandsons and a parcel of real estate to the third grandson, which she subsequently conveyed to him. One half of the residue was given to Matilda S. Magill, the widow of the testatrix's son, and the remaining half to the granddaughter, Maud. The amount of the legacies given to the two grandsons was changed by a codicil. Upon the death of one of these grandsons in June, 1905, leaving a widow and two infant children, the testatrix executed a codicil giving his legacy to his widow.

The cardinal rule in the interpretation of a will is the ascertainment of the testator's intent from an examination of the language employed by him construed in the light of the circumstances known to him at the time he executed the will, and his intent, when determined, must be given effect unless contrary to some rule of law. *Fitts* v. *Powell,* 307 Mass. 449, 454. *Mills* v. *Blakelin,* 307 Mass. 542, 544. *Robertson* v. *Robertson,* 313 Mass. 520, 523–524.

. We must ascertain the persons the testatrix intended to share in the principal of the trust, whom she described as those members of her son's family who survived Maud. The word "family" is not one of inflexible meaning, and its significance to a large extent depends upon the context and the purpose for which it is employed. In its primary sense, it denotes a group of persons related to each other by marriage or blood living together under a single roof and comprising a household whose head is usually the father or husband. *Bradlee* v. *Andrews,* 137 Mass. 50, 55. *Phelps* v. *Phelps,* 143 Mass. 570, 574. *Spear* v. *Boston Police Relief Association,* 195 Mass. 351. *Cowden's Case,* 225 Mass. 66, 67. *Gritta's Case,* 236 Mass. 204, 206. *Moore's*

*Case*, 294 Mass. 557, 559. It is plain that the testatrix did not use the word to designate those who comprised her son's household. No such household existed at the time the will was executed. She knew that her son had died a few months before, that his widow, Matilda, and his daughter, Maud, made their home with her, and that his three other children were living separate from each other in different places. The word, however, has been construed to include those who have left their father's home and have married and established their own homes when the context and purpose indicate that such signification should be attributed to it. *Townsend* v. *Townsend*, 156 Mass. 454. *Newman's Case*, 222 Mass. 563, 568. It is not contended that any of the parties ceased to be members of the son's family because they no longer lived with his widow and his remaining children. "Family" has sometimes been construed to designate children when the circumstances show that such a meaning was intended. *Whiting* v. *Whiting*, 4 Gray, 236, 241. *Bowditch* v. *Andrew*, 8 Allen, 339, 342. *Bates* v. *Dewson*, 128 Mass. 334. It has been used to denote one's wife or husband together with lineal descendants. Indeed, this is the meaning adopted by the American Law Institute Restatement on Property, § 293, and by our own decisions. *Bates* v. *Dewson*, 128 Mass. 334. *Dodge* v. *Boston & Providence Railroad*, 154 Mass. 299, 301. *Townsend* v. *Townsend*, 156 Mass. 454, 456–457. *Gardiner* v. *Everett*, 240 Mass. 536, 539. See also *Crosgrove* v. *Crosgrove*, 69 Conn. 416; *Farnam* v. *Farnam*, 83 Conn. 369, 377; *Taylor* v. *Watson*, 35 Md. 519; *Hall* v. *Stephens*, 65 Mo. 670; *Langmaid* v. *Hurd*, 64 N. H. 526; *Smith* v. *Greeley*, 67 N. H. 377, 379; *In re Williamson's Estate*, 45 S. D. 180; *Executors of White* v. *White*, 30 Vt. 338, 343.

The appellant was not entitled to receive all the trust fund to the exclusion of the children of his two deceased brothers unless the words "the then living members of her [Maud's] father's family" are construed to mean only the children of Maud's father who survived her. If the testatrix intended to confine her gift to the children of her son who outlived their sister, she could have easily expressed

such a limitation in apt language. Nowhere in the will or codicils does the word "children" appear. The testatrix gave each of her three grandsons an equal share in the property that came from her husband, and she was willing that the share of a grandson who predeceased her should go to his issue. G. L. (Ter. Ed.) c. 191, § 22. *Thompson* v. *Pew,* 214 Mass. 520. *Pitman* v. *Pitman,* 314 Mass. 465. The granddaughter, Maud, was given a share slightly in excess of that given to each brother, but, so far as the grandsons and their issue were concerned, the plan of the testatrix was to distribute this property equally among the grandsons and the issue of any deceased grandson who were living at the time of her death. The testatrix pursued a different plan in the disposition of property that she held in her own right. Her first thought was to care for her granddaughter, who was single, thirty-five years of age and living with her. She created for her benefit a trust fund of about $15,000 or $16,000, which apparently was the major portion of her estate. The provisions made for the three grandsons were not of the same value. The legacy of one of them, who predeceased the testatrix, was given by a codicil to his widow although he was survived by issue. She therefore knew how to exclude the issue of a deceased grandson from taking his share. The question is whether the issue of a deceased grandson was excluded in the distribution of the trust.

Those who were to share in the trust fund could not be ascertained until the death of Maud. *Tyler* v. *City Bank Farmers Trust Co.* 314 Mass. 528, 532. *National Shawmut Bank* v. *Joy,* 315 Mass. 457, 467. *Barker* v. *Monks,* 315 Mass. 620. *Amerige* v. *Goddard,* 316 Mass. 566. That event might not happen until many years after the death of the testatrix. It in fact occurred thirty-six years thereafter. The testatrix knew that one of Maud's brothers had died and she must have known that all of them might predecease Maud. Two of them did. It would be natural for her to consider the changes that lapse of time might make in the membership of the class which was to share in the distribution of the trust, and she described the remainder-

men not as children of her son but as surviving members of his family. That description would properly include all those who claimed lineage to the son as a common ancestor and permit them all to share in the distribution of the fund excepting only that the issue of living grandsons could not compete with their parents. *Manning* v. *Manning,* 229 Mass. 527. *Ernst* v. *Rivers,* 233 Mass. 9. *Agricultural National Bank* v. *Miller,* 316 Mass. 288. *Worcester County Trust Co.* v. *Marble,* 316 Mass. 294.

If the grandsons alone were intended to share in the trust fund and they all predeceased Maud, who died without issue, then the trust fund would pass as intestate property unless it fell into the residuary clause. It is plain that the testatrix did not intend that the trust property should go to both the residuary legatees. Maud was given no more than an equitable life estate in the trust. The will provided that, if she married, her husband should have no interest in the trust property either before or after her death. No one other than her issue, if she left any, could claim under the will any interest in this property through her. *Pratt.* v. *Condon,* 239 Mass. 167, 172. *Fitts* v. *Powell,* 307 Mass. 449, 453. The testatrix did not intend to give her any vested interest in the corpus of the trust, and did not contemplate that she should acquire any interest therein as a residuary legatee. See *Knowlton* v. *Sanderson,* 141 Mass. 323; *Fargo* v. *Miller,* 150 Mass. 225; *Heard* v. *Read,* 169 Mass. 216, 221; *Welch* v. *Howard,* 227 Mass. 242, 246; *Thompson* v. *Bray,* 313 Mass. 717. Under the supposed contingency, if the property should fall into the residuary clause, that would obviously result in a division of the trust property which the testatrix never intended.

If the word "family" is construed to mean the lineal descendants of the son, then the failure of the testatrix to make any change in the trust provisions with reference to the issue of a deceased grandson at the time she executed the second codicil giving his legacy to his widow would indicate that she thought no change was necessary, as she intended such issue to share in the distribution of the trust property. The provision that Maud's issue should share equally in

the trust fund does not carry an implication that the issue of the deceased grandsons, none of whom was expressly mentioned, should not share. The mention of Maud's issue was coupled with a direction that they should share equally, and the reference to them was not for the purpose of bringing them into the class which was to share in the distribution of the trust property but was for the purpose of fixing the proportions in which the fund was to be divided in case she left issue. *Jackson* v. *Roberts*, 14 Gray, 546, 551. *Dove* v. *Johnson*, 141 Mass. 287, 291. *Fitts* v. *Powell*, 307 Mass. 449, 455.

A reading of the entire will and codicils in the light of the circumstances attending their execution as shown by the statement of agreed facts demonstrates that the words "the then living members of her father's family" were employed in accordance with the frequent usage of the word "family" to designate the lineal descendants of the testatrix's son, and this construction of the word is consistent with the provisions of the will and carries out the intention of the testatrix. *Whiting* v. *Whiting*, 4 Gray, 236. *Bowditch* v. *Andrew*, 8 Allen, 339. *Bates* v. *Dewson*, 128 Mass. 334. *Townsend* v. *Townsend*, 156 Mass. 454. *In re Keegan's Estate*, 37 N. Y. Sup. (2d) 368.

The appellees, the great-grandchildren of the testatrix, not having appealed are not now entitled to a decree more favorable to them than the decree entered. *Coe* v. *Coe*, 313 Mass. 232, 234, and cases cited. They have not contended that the distribution should have been made per capita and have requested that the decree be affirmed.

*Decree affirmed.*