OLD COLONY TRUST COMPANY, trustee, *vs.* GERTRUDE TOWNSEND & others.

Essex.     March 9, 1949. — May 2, 1949.

Present: QUA, C.J., LUMMUS, RONAN, & WILLIAMS, JJ.

*Trust*, Capital and income, Trustee's compensation. *Capital and Income. Devise and Legacy*, Capital and income.

A Probate Court under G. L. (Ter. Ed.) c. 206, § 16, as amended by St. 1941, c. 36, might properly allow an apportionment of the compensation of a trustee under a will between principal and income where it was found that the charges were fair and reasonable and that the apportionment was fair and reasonable, and where the will, making no mention of the trustee's compensation, displayed a dominant purpose of the testator to care for his daughters during their lives by means of the trust but no concern as to final disposition of his property.

PETITIONS in the Probate Court for the county of Essex for allowance of certain accounts of the trustee under the will of Charles W. Townsend, late of Ipswich.

The case was heard by *Costello*, J.

*A. Brayton*, for the petitioner.

*J. A. Murphy*, (*L. B. Phister* with him,) for the respondents.

RONAN, J.    This is an appeal by the trustee under the will of Charles W. Townsend from a decree of the Probate Court disallowing six items in the eighth to twelfth accounts,

inclusive, which charged a portion of the trustee's compensation to the principal of the trust. The judge found that the charges were fair and reasonable and that, if it were proper for the trustee to apportion its charges for services between principal and income, the apportionment made by the trustee was fair and reasonable, but ruled that under the provisions of the will such items could be charged only against income.

All the life beneficiaries assented to the allowance of the accounts, but they did not represent those who would ultimately take the trust property because they could not be ascertained until the trust terminated as to the share of each of the testator's daughters. The appointment of a guardian ad litem was not only proper but necessary for reasons fully discussed in *Young* v. *Tudor*, 323 Mass. 508.

The accounts now involved cover the period from February 1, 1942, to January 20, 1947. General Laws (Ter. Ed.) c. 206, § 16, providing for reasonable compensation to trustees and that they shall have such compensation as the court may allow, was amended by St. 1941, c. 36, by adding thereto the following: "Such compensation may be apportioned between principal and income as the court may determine." This amendment was enacted at a period during which income from investments had suffered a sharp decline and when there was no reasonable prospect that it would soon again reach the average yield of former years. The evidence shows what would appear to be a matter of common knowledge — that the yield from securities had substantially decreased, while the cost of administering trust estates had increased, not only by reason of the cost of labor but also by reason of the fact that the amount of services required of a trustee had become increasingly extensive and involved. The cumulative effect of a diminution of gross income and a great rise in expenses has decreased the net income far below what it would have been in normal times. In the instant case, the gross income as disclosed by the eighth account amounted to $2,990.56 and as disclosed by the twelfth account amounted to $3,296.97. The

evidence shows that a charge of six per cent of the income had been frequently made and allowed by Probate Courts for the services of a trustee — although there never was any rule of law in this Commonwealth establishing any fixed percentage as reasonable compensation, *Parker* v. *Hill*, 185 Mass. 14; that, in order to give the trustee fair compensation, a greater amount of the income would have to be allowed if that was the only source from which compensation was payable; and a much larger proportionate part of the income would be required for compensation in trust estates of $80,000 or less. The trust here amounts to approximately $80,000. The purpose of St. 1941, c. 36, was to lessen the hardship imposed upon life beneficiaries by reason of the prevailing economic conditions which have reduced the net income of trusts and to transfer a part of the burden to remaindermen, in order to provide for a fair and equitable adjustment between beneficiaries and remaindermen. The statute is the counterpart of similar legislation providing for apportionment between income and principal where a portion of the principal has become unproductive subsequent to the date of death of the testator or settlor, as the case may be, if the will or indenture does not prevent it, and relief in appropriate cases has been granted in the absence of a statute. *Harvard Trust Co.* v. *Duke*, 304 Mass. 414. *Springfield Safe Deposit & Trust Co.* v. *Wade*, 305 Mass. 36. *McKechnie* v. *Springfield*, 311 Mass. 406. *Union Trust Co.* v. *Dexter*, 311 Mass. 737. *Amerige* v. *Goddard*, 316 Mass. 566. No apportionment can be made where a contrary intent is expressed in the trust instrument. *Old Colony Trust Co.* v. *Walker*, 319 Mass. 325. Whether there should be an apportionment of the expenses incurred in the administration of a trust depends upon the intent of the testator or settlor as expressed or implied in the instrument creating the trust. A judge of probate has considerable discretion over the compensation of trustees. Statute 1941, c. 36, authorizes him to apportion the trustee's compensation between principal and income as he may determine; and where the facts in a particular

case call for an apportionment, then it should be made unless the trust instrument manifests a clear and definite intent that the charge for compensation shall not be distributed between principal and income. The question presented is whether the will of the testator prohibits an apportionment.

The testator, after devising different portions of all his land in Ipswich to his son and three daughters, created a residuary trust in which he authorized the trustee "after deducting all proper charges and expenses to pay the annual net income thereof" in certain proportions to his daughters. Each daughter was given a testamentary power of appointment over a share of the trust property which corresponded to her share in the income and, in default of appointment, such share in the principal was to go to her next of kin. An unmarried daughter was given a larger share of the income than her two married sisters, but if she married then the income was to be divided equally among them. His testamentary plan was simple. The only trust beneficiaries named in the will were his daughters. After he made provision for them he seems to have cared little as to the final disposition of his property. He had given them a general power of appointment and, if they did not wish to exercise it, he was willing to let distribution be made to their next of kin. The ultimate recipients of his property might well be persons whom he had never seen and never known. He was content with merely providing for his daughters. When they had enjoyed his benefaction during their respective lives they could do whatever they pleased with the property. It is unlikely that, with their welfare uppermost in his mind, he intended that the interests which he gave must be necessarily sacrificed for the advantage of strangers and that they, who were the only ones for whom he was solicitous, must be saddled with the entire burden of the compensation of the trustee in a situation which developed years after his death and to meet which the statute was passed.[1] Of course, he did not contemplate the passage of

---

[1] The will was executed on January 16, 1930, and a codicil on November 7, 1933; both were filed for probate on April 11, 1934. — REPORTER.

the statute permitting apportionment of the trustee's compensation between principal and income and, so far as the record goes, there is nothing to indicate that he anticipated such a shrinkage of gross income or the increased costs of administration of the trust. The testator did not say, as did the settlor in *Old Colony Trust Co.* v. *Walker*, 319 Mass. 325, that the trustee's compensation was to be paid out of income. The testator made no mention of compensation. He did provide that, after the deduction of all proper charges and expenses, the net income should be paid to the life beneficiaries. In *Heard* v. *Eldredge*, 109 Mass. 258, it was held in a somewhat similarly phrased will that brokerage commissions incurred in investing trust funds should be charged to income. No question of apportionment was involved. There is nothing to indicate that such commissions were rapidly increasing in amounts after the death of the decedent in that case. The facts there differed from the facts here. It was said in *Jordan* v. *Jordan*, 192 Mass. 337, 346, that the practice of charging brokerage commissions to income was too well settled to be disturbed although, "If the question were open, objections which perhaps could be soundly urged against this rule would call for careful examination, but the rule has been so long settled, and presumably followed by trustees, that it ought not to be disturbed." In the session next after this decision, the Legislature enacted St. 1907, c. 371, now G. L. (Ter. Ed.) c. 203, § 22, providing that such commissions should be charged to principal "Unless otherwise expressly provided by the trust instrument." The testator in the instant case authorized the trustee in its discretion to charge brokerage commissions to income and to determine whether returns from investments "shall be considered as principal or income and to apportion them accordingly." It is plain that in respect to brokerage commissions he left it to the trustee to decide whether they were proper charges against income although he made no mention of the trustee's compensation which undoubtedly would be a much larger expense than brokerage commissions. It is also significant that he had

in mind the apportionment between principal and income in reference to the income from investments but he made no mention of apportionment of the trustee's compensation. It is urged that such an omission indicated an intent that there should be no such apportionment and further that it was unnecessary, as the item for this expense was included in the proper charges and expenses which were to be deducted before the net income was computed and paid to the life beneficiaries. There is strength in this contention, but it is outweighed by the dominant purpose of the will to benefit those who were undoubtedly near and dear to the testator and to whom he intended to give an income which would be subject to market fluctuations during their lives but not one which would be materially reduced by a great and unexpected rise in the cost of administration of the trust. The downward trend in the income could be checked to an appreciable degree by apportioning between principal and income the expenses of administering the trust. The will is to be interpreted reasonably to carry out its principal object. Giving weight to the natural solicitude of a father for his daughters, we are of opinion that permitting an apportionment would not be inconsistent with the testator's testamentary plan and is fairly required in the circumstances presented. We think the case comes within the general principles stated in *Harvard Trust Co.* v. *Duke*, 304 Mass. 414, and the decisions which follow it, many of which have already been cited. The present tendency of legislation and decisions is to extend some measure of relief to life beneficiaries, who usually are the immediate and chief concern of a testator, from hardships not thought of nor anticipated by him by permitting equitable adjustments between principal and income unless otherwise clearly forbidden by the trust instrument. For the allocation of trustee's compensation between principal and income, see uniform principal and income act, § 12, 9 U. L. A. page 602; Scott, Trusts, § 241A, enumerating the recent adoption in other States of statutes having a purpose similar to St. 1941, c. 36; Nossaman, Trust Administration & Taxa-

tion, § 256; *Matter of Pennock*, 285 N. Y. 475; *Estate of Quinn*, 64 R. I. 322; 1 A. L. R. (2d) 1328. Compare *Bridge-port-City Trust Co.* v. *First National Bank & Trust Co.* 124 Conn. 472.

The judge was right in finding that the charges of the trustee were fair and reasonable and so was the apportionment of these charges between principal and income, but he was wrong in ruling that the will prohibited such apportionment. The final decree is reversed and a decree is to be entered allowing the accounts as presented.

*So ordered.*